406 U.S. 109 (1972)
WASHINGTON ET AL.
v.
GENERAL MOTORS CORP. ET AL.
No. 45, Orig.
Supreme Court of United States.
Argued February 28-29, 1972.
Decided April 24, 1972.
ON MOTION FOR LEAVE TO FILE BILL OF COMPLAINT.
Fredric C. Tausend, Special Assistant Attorney General of Washington, argued the cause for plaintiffs. With him on the briefs were Slade Gorton, Attorney General of Washington, William L. Dwyer and David G. Knibb, Special Assistant Attorneys General; William J. Scott, Attorney General of Illinois, and Robert S. Atkins and David C. Landgraf, Assistant Attorneys General; *110 Gary Nelson, Attorney General of Arizona, and Malcolm P. Strohson, Assistant Attorney General; Duke W. Dunbar, Attorney General of Colorado, John Moore, Deputy Attorney General, and William Tucker, Assistant Attorney General; Bertram T. Kanbara, Attorney General of Hawaii, and George Pai, Deputy Attorney General; W. Anthony Park, Attorney General of Idaho, and Richard Greener, Deputy Attorney General; Richard C. Turner, Attorney General of Iowa; Kent Frizzell, Attorney General of Kansas, and Richard Hayse, Assistant Attorney General; James S. Erwin, Attorney General of Maine; Robert H. Quinn, Attorney General of Massachusetts, and Neal Colicchio, Assistant Attorney General; Douglas M. Head, Attorney General of Minnesota; John C. Danforth, Attorney General of Missouri; Helgi Johanneson, Attorney General of North Dakota, and Paul M. Sand, First Assistant Attorney General; Paul W. Brown, Attorney General of Ohio, and Donald Weckstein, Assistant Attorney General; Herbert F. DeSimone, Attorney General of Rhode Island; James M. Jeffords, Attorney General of Vermont, and John D. Hansen, Assistant Attorney General; Andrew P. Miller, Attorney General of Virginia, and Anthony F. Troy, Assistant Attorney General; Chauncey H. Browning, Jr., Attorney General of West Virginia, Gene Hal Williams, First Deputy Attorney General, and James G. Anderson III, Assistant Attorney General.
Lloyd N. Cutler argued the cause for defendants. With him on the briefs were Howard P. Willens, Jay F. Lapin, Louis F. Oberdorfer, James S. Campbell, Julian O. Von Kalinowski, and Paul G. Bower for Automobile Manufacturers Assn., Inc.; Walter J. Williams and Forrest A. Hainline, Jr., for American Motors Corp.; Tom Killefer, William E. Huth, G. William Shea, and Philip K. Verleger for Chrysler Corp.; Robert L. Stern and Carl J. Schuck for Ford Motor Co.; Ross L. Malone, Robert A. Nitschke, Hammond E. Chaffetz, Joseph DuCoeur, *111 Marcus Mattson, and Richard F. Outcault, Jr., for General Motors Corp.
Brief for Alabama et al. as amici curiae in support of plaintiffs' motion for leave to file bill of complaint was filed by J. Lee Rankin, David I. Shapiro, and Jerome S. Wagshal, and by the following Attorneys General for their respective States: William J. Baxley of Alabama, John E. Havelock of Alaska, Evelle J. Younger of California, Robert L. Shevin of Florida, Jack P. F. Gremillion of Louisiana, Francis B. Burch of Maryland, A. F. Summer of Mississippi, Robert List of Nevada, David L. Norvell of New Mexico, Louis J. Lefkowitz of New York, Larry Derryberry of Oklahoma, J. Shane Creamer of Pennsylvania, Daniel R. McLeod of South Carolina, Gordon Mydland of South Dakota, Crawford C. Martin of Texas, and Robert W. Warren of Wisconsin.
MR. JUSTICE DOUGLAS delivered the opinion of the Court.
Plaintiffs are 18 States who, by this motion for leave to file a bill of complaint, seek to invoke this Court's original jurisdiction under Art. III, § 2, cl. 2, of the Constitution.[1] Named as defendants are the Nation's four major automobile manufacturers and their trade association.
Plaintiffs allege a conspiracy among the defendants to restrain the development of motor vehicle air pollution control equipment. They allege that the conspiracy began as early as 1953 but was concealed until January 1969. Count I of the proposed complaint charges a violation of the federal antitrust laws. Count II charges a common-law conspiracy in restraint of *112 trade independently of the Sherman and Clayton Acts.[2] In their prayer for relief, plaintiffs seek an injunction requiring the defendants to undertake "an accelerated program of spending, research and development designed to produce a fully effective pollution control device or devices and/or pollution free engine at the earliest feasible date" and also ordering defendants to install effective pollution control devices in all motor vehicles they manufactured during the conspiracy and as standard equipment in all future motor vehicles which they manufacture. Other prophylactic relief is also sought.
The proposed complaint plainly presents important questions of vital national importance. See, e. g., Hearings before the Subcommittee on Air and Water Pollution of the Senate Committee on Public Works, 90th Cong., 1st Sess. (1967). Our jurisdiction over the controversy cannot be disputed. Georgia v. Pennsylvania R. Co., 324 U. S. 439; Georgia v. Tennessee Copper Co., 206 U. S. 230. For reasons which will appear, however, we deny leave to file the bill of complaint.
The gravamen of plaintiffs' allegations is a horizontal conspiracy among the major automobile manufacturers to impede the research and development of automotive air pollution control devices. See generally L. Jaffe & L. Tribe, Environmental Protection 141-180 (1971). It *113 is argued that the facts alleged in support of the statutory and common-law claims are identical and that they could be elicited as well by a Special Master appointed by this Court as by a federal district court judge, and that resort to a Special Master would not place a burden on this Court's time and resources substantially greater than when we hear an antitrust case on direct appeal from a district court under the Expediting Act, 32 Stat. 823, as amended, 15 U. S. C. § 29. And it is argued that the sheer number of States that seek to invoke our original jurisdiction in this motion is reason enough for us to grant leave to file.[3]
The breadth of the constitutional grant of this Court's original jurisdiction dictates that we be able to exercise discretion over the cases we hear under this jurisdictional head, lest our ability to administer our appellate docket be impaired. Massachusetts v. Missouri, 308 U. S. 1, 19; Ohio v. Wyandotte Chemicals Corp., 401 U. S. 493, 497-499; H. Hart & H. Wechsler, The Federal Courts and the Federal System 258-260 (1953); Woods & Reed, The Supreme Court and Interstate Environmental Quality: Some Notes on the Wyandotte Case, 12 Ariz. L. Rev. 691; Note, 11 Stan. L. Rev. 665, 694-700. In Massachusetts v. Missouri, supra, at 18-19, where Massachusetts sought to invoke our original jurisdiction in order to collect a tax claim, we said:
"In the exercise of our original jurisdiction so as truly to fulfill the constitutional purpose we not only must look to the nature of the interest of the complaining Statethe essential quality of the right assertedbut we must also inquire whether recourse to that jurisdiction . . . is necessary for the State's protection. . . . To open this Court to *114 actions by States to recover taxes claimed to be payable by citizens of other States, in the absence of facts showing the necessity for such intervention, would be to assume a burden which the grant of original jurisdiction cannot be regarded as compelling this Court to assume and which might seriously interfere with the discharge by this Court of its duty in deciding the cases and controversies appropriately brought before it."
By the same token, we conclude that the availability of the federal district court as an alternative forum and the nature of the relief requested suggest we remit the parties to the resolution of their controversies in the customary forum. The nature of the remedy which may be necessary, if a case for relief is made out, also argues against taking original jurisdiction.
Air pollution is, of course, one of the most notorious types of public nuisance in modern experience. Congress has not, however, found a uniform, nationwide solution to all aspects of this problem and, indeed, has declared "that the prevention and control of air pollution at its source is the primary responsibility of States and local governments." 81 Stat. 485, 42 U. S. C. § 1857 (a) (3). To be sure, Congress has largely preempted the field with regard to "emissions from new motor vehicles," 42 U. S. C. § 1857f-6a (a); 31 Fed. Reg. 5170 (1966); and motor vehicle fuels and fuel additives, 84 Stat. 1699, 42 U. S. C. § 1857f-6c (c) (4). See Currie, Motor Vehicle Air Pollution: State Authority and Federal Pre-emption, 68 Mich. L. Rev. 1083 (1970); Hill, The Politics of Air Pollution: Public Interest and Pressure Groups, 10 Ariz. L. Rev. 37, 44-45 (1968); Stevens, Air Pollution and the Federal System: Responses to Felt Necessities, 22 Hastings L. J. 661, 674-676 (1971). It has also pre-empted the field so far as emissions from airplanes are concerned, 42 U. S. C. *115 §§ 1857f-9 to 1857f-12. So far as factories, incinerators, and other stationary devices are implicated, the States have broad control to an extent not necessary to relate here.[4] See Stevens, supra, passim; Comment, 58 Calif. L. Rev. 1474 (1970). But in certain instances, as, for example, where federal primary and secondary ambient air quality standards have been established,[5] 42 U. S. C. §§ 1857c-4 and 1857c-5, or where "hazardous air pollutant[s]" have been defined, 42 U. S. C. § 1857c-7, there may be federal pre-emption. See 42 U. S. C. § 1857c-8 et seq. Moreover, geophysical characteristics which define local and regional airsheds are often significant considerations in determining the steps necessary to abate air pollution. See Hearings before the Subcommittee on Air and Water Pollution of the Senate Committee on Public Works, 90th Cong., 1st Sess., 130 (1967); Coons, Air Pollution & Government Structure, 10 Ariz. L. Rev. *116 48, 60-64 (1968). Thus, measures which might be adequate to deal with pollution in a city such as San Francisco, might be grossly inadequate in a city such as Phoenix, where geographical and meteorological conditions trap aerosols and particulates.
As a matter of law as well as practical necessity corrective remedies for air pollution, therefore, necessarily must be considered in the context of localized situations.[6] We conclude that the causes should be heard in the appropriate federal district courts.[7]
The motions of the States of North Dakota and West Virginia to be joined as parties plaintiff are granted. The motion for leave to file a bill of complaint is denied and the parties are remitted without prejudice to the other federal forum.
It is so ordered.
MR. JUSTICE POWELL took no part in the consideration or decision of these motions.
NOTES
[1] Fifteen States originally moved for leave to file a bill of complaint. We subsequently granted leave to the State of Idaho to intervene as plaintiff. 403 U. S. 949. By today's decision we also grant leave to the States of North Dakota and West Virginia to be joined as parties plaintiff.
[2] A third count of plaintiffs' proposed complaint also charged "a public nuisance contrary to the public policy of the Plaintiff States . . . [and] the federal government." Motion for Leave to File Bill of Complaint 12. In a memorandum filed with this Court Feb. 19, 1972, however, plaintiffs struck this count from their proposed complaint; but Idaho, the intervenor, did not join in that motion. In light of our disposition of Counts I and II of the bill of complaint, Idaho's motion for leave to file a bill of complaint solely for Count III should be denied a fortiori. Should any of the plaintiffs desire to renew the public nuisance count of the bill of complaint in the District Court, they are free to do so under our decision today in Illinois v. City of Milwaukee, ante, p. 91.
[3] In addition to the 18 States which are plaintiffs, 16 other States and the City of New York have filed a brief as amicus curiae supporting plaintiffs' motion for leave to file a bill of complaint.
[4] Because federal motor vehicle emission control standards apply only to new motor vehicles, States also retain broad residual power over used motor vehicles. Moreover, citizens, States, and local governments may initiate actions to enforce compliance with federal standards and to enforce other statutory and common-law rights. 42 U. S. C. § 1857h-2.
[5] National primary ambient air quality standards are those "which in the judgment of the Administrator [of the Environmental Protection Agency] . . . are requisite to protect the public health . . . ." 42 U. S. C. § 1857c-4 (b) (1). Secondary ambient air quality standards are those "requisite to protect the public welfare," 42 U. S. C. § 1857c-4 (b) (2), which "includes, but is not limited to, effects on soils, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate, damage to and deterioration of property, and hazards to transportation, as well as effects on economic values and on personal comfort and well-being." 42 U. S. C. § 1857h (h). For implementation plans for primary and secondary ambient air quality standards, see 42 U. S. C. § 1857c-5.

Rules and regulations setting ambient air quality standards have been promulgated by the Environmental Protection Agency. 36 Fed. Reg. 22384 (1971).
[6] It was in recognition of this fact that Congress directed the Administrator of the Environmental Protection Agency to "designate as an air quality control region any interstate area or major intrastate area which he deems necessary or appropriate for the attainment and maintenance of ambient air quality standards." 42 U. S. C. § 1857c-2 (c).
[7] Multi-district litigation apparently involving the same factual claims as are presented here has been consolidated in the District Court for the Central District of California and pretrial proceedings are already under way. See In re Motor Vehicle Air Pollution Control Equipment, 311 F. Supp. 1349 (Jud. Panel on Multidist. Lit. 1970).