PEOPLE OF the STATE OF ILLINOIS,
ex rel. William J. SCOTT, Attorney General of the State of Illinois, Plaintiff,

People of the State of Michigan,
Intervening Plaintiff,

v.

CITY OF MILWAUKEE, WISCON-
SIN, et al., Defendants.

No. 72 C 1253.

United States District Court,
N. D. Illinois, E. D.

Nov. 1, 1973.

William J. Scott, Atty. Gen., for the State of Illinois, Chicago, Ill., for plaintiff.

James B. Brennan, City Atty., Milwaukee, Wis., for Milwaukee.

Ewald L. Moerke, Jr., Milwaukee, Wis., for Metro. Sewage Commission of County of Milwaukee.

Kenneth J. Bukowski, Milwaukee, Wis., for City of South Milwaukee.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motion of the defendants City of Milwaukee, the Sewage Commission of the City of Milwaukee, the Metropolitan Sewage Commission of the County of Milwaukee, and the City of South Milwaukee to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

The plaintiff, the People of the State of Illinois, consists of the more than 11 million residents of Illinois, a sovereign state of the United States of America. Plaintiff alleges that it has a vital concern with matters of environmental quality affecting its air, land and water and in this regard has enacted comprehensive environmental legislation (the Illinois Environmental Protection Act of 1970, Ill.Rev.Stat.1971, Ch. 111½, § 1001

et seq.), which legislation includes concern over pollution of the water of the State of Illinois, whether such pollution occurs as a result of discharges within or outside of Illinois. The People of the State of Michigan join in this action as an intervening plaintiff.

The defendants, City of Milwaukee, City of Kenosha, City of Racine, City of South Milwaukee are municipalities incorporated under the laws of the State of Wisconsin, political subdivisions thereof, and hence citizens of that State; the defendant Sewage Commission of the City of Milwaukee is charged by law with the duty of collecting, transmitting and disposing of the City's sewage; while the defendant Metropolitan Sewage Commission of the County of Milwaukee has the responsibility for the transmission, treatment, and disposal of sewage from territory located within its drainage area.

The plaintiff in the complaint alleges that the People of the State of Illinois are being injured by the defendant's practice of depositing raw sewage in Lake Michigan thereby causing pollution of Illinois' territorial waters of Lake Michigan. The plaintiff seeks an injunction against defendants prohibiting the complained of practice. This action is based on a federal question and diversity of citizenship jurisdiction pursuant to §§ 1331(a) and 1332. The plaintiff, in its complaint, alleges an action based on: (1) federal common law nuisance involving interstate waters; (2) violations of the Illinois Environmental Protection Act, 111½ Ill.Rev.Stat. § 1001; and (3) state common law nuisance. The Supreme Court of the United States has previously declined to exercise jurisdiction in this cause, holding that pollution of interstate or navigable water could be abated under a federal common law claim based on nuisance and that such action was one "arising under" the laws of the United States within the meaning of 28 U.S.C. § 1331(a) and within the jurisdiction of the federal district courts. Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1927).

The defendants, in support of their instant motion, contend that the federal common law nuisance action has been preempted by the Federal Water Pollution Control Act, 33 U.S.C. § 1151, et seq., as amended by P.L. 92–500, October 18, 1972. The plaintiff in opposition to the instant motion contends that the instant cause of action has not been preempted by the 1972 amendments to the Federal Water Pollution Control Act (Water Pollution Prevention and Control Act of 1972, 33 U.S.C. § 1251, et seq., P.L. 92–500).

It is the opinion of this Court that the defendants' motion is without merit.

I. THE FEDERAL WATER POLLUTION CONTROL ACT, 33 U.S.C. § 1551, et seq., AS AMENDED BY P.L. 92–500, OCTOBER 18, 1972 DOES NOT PREEMPT THE STATE OF ILLINOIS' RIGHT TO SEEK ABATEMENT IN FEDERAL DISTRICT COURT OF A FEDERAL COMMON LAW NUISANCE IN INTERSTATE OR NAVIGABLE WATERS.

A. *Pre-1972 Amendments*

To properly understand the historical development of the 1972 amendments to the Federal Water Pollution Control Act, one must first examine the status of the law as it existed prior to those amendments. Prior to the 1972 amendments, the Supreme Court and other courts repeatedly rejected the contention that the Federal Water Pollution Control Act preempted the right of states to seek common law nuisance relief from water pollution in state or federal courts. This consistent rejection was made in response to the specific argument that the Federal Water Pollution Control Act was a congressional attempt to create a comprehensive and uniform federal control program. See Illinois v. Milwaukee, *supra*; Ohio v. Wyandotte Chemical Company, 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971); United States v. Bushey, 346 F.Supp. 145 (D.C.Vt.1972).

The application of federal common law to abate a public nuisance in interstate or navigable waters is not inconsistent with the Federal Water Pollution Control Act. Illinois v. Milwaukee, *supra*. The federal scheme is not pre-emptive of state action. Section 1(b) of the Federal Water Pollution Control Act declares that the policy of Congress is to recognize, preserve, and protect the primary responsibilities and rights of the states in preventing and controlling water pollution, 33 U.S.C. § 1151(b) (1970 ed.). Section 10 of that act provides that except where the Attorney General has actually obtained a court order of pollution abatement on behalf of the United States, "State and interstate action to abate pollution of . . . navigable waters . . . shall not, . . . be displaced by Federal enforcement action," 33 U.S.C. § 1160(b) (1971 ed.). The Environmental Quality Improvement Act of 1970, 84 Stat. 114, 42 U.S.C. § 4371 (1970 ed.), while stating the general policy of Congress is protecting the environment, also states: "the primary responsibility for implementing this policy rests with State and local governments" 42 U.S.C. § 4371(b)(2) (1970 ed.). Under federal law in 1970, states did indeed have primary responsibility for setting water quality standards; the federal agencies only set water quality standards for a state if the state defaulted. 33 U.S.C. § 1160(c) (1970 ed.).

Where Congress specifically intends that its exercise of statutory powers should preempt all other remedies it has expressly so stated that it is preempting such remedies. For example, 33 U.S.C. § 1163(f) expressly prohibits action beyond the terms of the Federal Water Pollution Control Act with respect to the regulation of marine sanitation devices. In contrast, other sections of the Federal Water Pollution Control Act, e. g. 33

U.S.C. §§ 1151(b), 1151(c), indicate that much residual authority was left apart from the provisions of the Federal Water Pollution Control Act.[1]

### B. *The 1972 Amendments*

■ An analysis of the 1972 amendments of the Federal Water Pollution Control Act clearly shows that Congress in no way intended to destroy any remedies available to the states prior to the passage of the 1972 amendments. Thus, in § 101(b), the Congress adopts a statement very similar to that which previously existed in 33 U.S.C. § 1151(b):

> "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of the States to prevent, reduce and eliminate pollution."

In addition, the 1972 amendments adopted a provision similar to 33 U.S.C. § 1151(c). Specifically § 510 of the 1972 amendments states:

> "Except as expressly provided in this chapter nothing . . . shall . . . (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States."

Nowhere do the 1972 amendments express any intention of eliminating the rights of the states to seek common law nuisance protection either in the state or federal courts, as enunciated in Ohio v. Wyandotte Chemical Co., *supra*, and Illinois v. Milwaukee, *supra*.

■ Moreover, Congress was very explicit in the 1972 amendments where it intended to preempt state authority and to make the statutory structure of the amendments the exclusive remedial scheme. Thus, Section 312(f)(1) of the 1972 amendments expressly prohibits any state action with regard to the regulation of marine sanitation devices. If

---

1. Similarly, the Supreme Court, in construing the Clean Air Act, 42 U.S.C. § 1857, et seq., has held that statutory preemption only exists where Congress has explicitly so stated; and that non-statutory remedies such as federal common law nuisances exist where there has been no express preemption. See Washington v. General Motors Corp., 406 U.S. 109, 92 S.Ct. 1396, 31 L.Ed.2d 727 (1972).

Congress had intended to preempt the common law rights of the states under the *Milwaukee* doctrine, it surely would have expressly stated such intent in the act and would not have utilized the language contained in Section 101(b) and Section 510(2). Further, it is well settled that statutes will not be construed in derogation of common law unless such intent is clear from the words of the statute. Isbrandtsen v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952). It is clear that the 1972 amendments to the Federal Water Pollution Control Act did not and were not intended to preempt actions based on federal common law nuisances.

## II. REGULATIONS PROMULGATED BY THE ENVIRONMENTAL PROTECTION AGENCY DO NOT DEMONSTRATE THE PREEMPTION OF ANY FEDERAL COMMON LAW RIGHT.

The defendants contend that the promulgation of two recent regulations, namely 40 C.F.R. 125 and 40 C.F.R. 130, by the Environmental Protection Agency preempts the federal common law right to bring a nuisance action for the pollution of interstate waters. More specifically, the defendants contend that at the time *Milwaukee* doctrine was predicated there were no existing standards or regulations capable of preempting federal common law action; however, the recent promulgation by the Environmental Protection Agency of two regulations now set up a uniform federal law which preempts federal common law rights.

Contrary to the defendants' contention, detailed and complex regulations governing water quality and waste discharges and permits existed under the pre-1972 Federal Water Pollution Control Act, 33 U.S.C. § 1151, et seq.[2]

Despite the existence of these regulations and the statutory provisions of the pre-1972 Federal Water Pollution Control Act, the United States Supreme Court held that these regulations and statutes did not preempt the common law nuisance action. Illinois v. Milwaukee, *supra*, 406 U.S. at 103, 92 S.Ct. 1385.[3]

There is much concern over the fact that in spite of the arsenal of federal power little is being done about water pollution.[4] That, of course, is not the issue before this Court. However, it is clear that the central issue raised by the instant motion is whether state action is preempted by federal law and regulations, and thus whether the protection of interstate waters has been left solely to the federally enacted statutes and standards.

Given the express intention of Congress to allow the states to establish tougher standards of performance it would seem illogical to argue that Congress intended the states to be bound solely by federal standards. The purpose of the Federal Water Pollution Control Act and its 1972 amendments was not to preempt but to supplement and amplify any pre-existing remedies. United States v. Bushey, 363 F.Supp.

2. See, e. g., the Joint Permit Program of the U.S. Environmental Protection Agency and the Army Corps of Engineers, 36 F.R. 6564, et seq., April 1, 1971.

3. Similarly the defendants' view of the restrictions of § 510 is inaccurate. While § 510 prohibits the states from adopting less stringent or easier standards of performance, § 510 was expressly intended to allow states to require more stringent or tougher standards of performance than required by the federal government. The House-Senate Conference Committee specifically states:

"Section 510 provides that States, political subdivisions, and interstate agencies retain the right to set more restrictive standards and limitations than those imposed under this Act." "*Joint Explanatory Statement of the Committee of Conference*", 92–1326, 1972 U.S.Code Cong. and Admin. News, Vol. 11, p. 3776 at 3825.

4. See Polikoff, "The Interlake Affair," Wash.Monthly, Vol. 3, No. 1, p. 7 (Mar. 1971).

110 (D.Vt. August 21, 1973). Consequently, the defendants' instant motion should be denied.

Accordingly, it is hereby ordered that the defendants' motion to dismiss is denied.