SOUTHEASTERN OAKLAND COUNTY RESOURCE RECOVERY AUTHORITY, a Michigan public corporation, Plaintiff–Appellee,

v.

The CITY OF MADISON HEIGHTS, a municipal corporation, Defendant–Appellant.

No. 92–2427.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 13, 1993.

Decided Sept. 22, 1993.

Marty A. Burnstein (briefed and argued), Ronald L. Cornell, Jr., Seyburn, Kahn, Ginn, Bess & Howard, Southfield, MI, for plaintiff-appellee.

Hugh B. Thomas (argued and briefed), Berry, Moorman, King, Cook & Hudson, Detroit, MI, Larry H. Sherman, Sherman & Sherman, Bingham Farms, MI, for defendant-appellant.

Mark A. Richardson, Troy, MI (briefed), for Clean Air Please, amicus curiae.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

In this preemption case, defendant City of Madison Heights, Michigan (Madison Heights) challenges the district court's grant of summary judgment in favor of plaintiff Southeastern Oakland County Resource Recovery Authority (SOCRRA). For the following reasons, we **AFFIRM**.

## I.

SOCRRA is a Michigan public corporation formed in 1955 to collect and dispose of non-hazardous solid waste for fourteen communities of Oakland County, including Madison Heights. From 1955 to 1988, SOCRRA operated a solid waste incinerator in Madison Heights, as part of Oakland County's Solid Waste Management Plan, a plan required by Michigan's Solid Waste Management Act (SWMA), Mich.Comp. Laws §§ 299.401–.436.

In 1990, SOCRRA proposed construction of a "Waste-to-Energy Facility" at the site of its old incinerator. The new facility would dispose of solid wastes, and generate electricity for sale to Detroit Edison. Oakland County has approved the new facility as part of its Five Year Plan Update to its Solid Waste Management Plan. SOCRRA's application for a permit under Michigan's Air Pollution Act (MAPA), Mich.Comp. Laws §§ 336.1–.107 is currently pending with the Michigan Department of Natural Resources.

Madison Heights strenuously opposes the new facility because, although the site was originally in an unpopulated part of Oakland County, the community of Madison Heights has grown up around the facility. Presently, the site for the new facility is within 100 feet of a community park, 300 feet of a school, 550 feet of a residential subdivision, and 700 feet of a senior citizens center. Based on these concerns, and the lack of federal or state siting requirements for solid waste incinerators,[1] Madison Heights passed a local ordinance regulating the location of air pollution emissions sources and solid waste incinerators. The ordinance, adopted in November 1990 after the new facility was included in Oakland County's Five Year Update Plan, states:

> Sec. 3–6. *Major Emission Sources.*
> After the effective date of this Ordinance, *it shall be unlawful to construct a new or modify an existing major emission source any part of which will be or is located closer than 300 feet to any adjacent property line, public road right-of-way, lake or*

---

1. The federal Clean Air Act, 42 U.S.C. § 7429(a)(3) requires the EPA to adopt siting requirements for solid waste incinerators. No siting requirements have been promulgated to date by either the EPA or Michigan.

*perennial stream, or closer than 900 feet to any existing occupied or unoccupied residence, public or school facility, health care facility, or recreational property.* The term "adjacent property line" includes, but is not limited to, the perimeter of property which is owned by the owner or operator of the major emission source but which is leased to or otherwise lawfully occupied or used by another person or entity. The term "recreational property" includes parks, golf courses, athletic fields and similar properties.

Madison Heights Ordinance No. 874, § 3–6 (emphasis added). An amendment adopted in September 1991, further provides:

> *Sec. 3–15 Solid Waste Incinerators.*
> After the effective date of this Ordinance, *it shall be unlawful to build a new or modify an existing solid waste incinerator which has or will have an air emission source closer than 900 feet to any part of an existing occupied or unoccupied residence, public or school facility, health care facility, food service facility, recreational property (including parks, golf courses, athletic facilities and similar properties), lakes or perennial stream.* Nothing in this Section is intended to exclude solid waste incinerators from the requirements or provisions of any other Section of this Chapter 3, as amended, and any violation hereof shall be subject to the Enforcement and Penalties provisions thereof.

Madison Heights Ordinance No. 884, § 3–15 (emphasis added). It is undisputed that the new facility falls under the ordinance's requirements, and that compliance with the ordinance is impossible at the present proposed site of the new facility.

SOCRRA filed suit in Michigan Circuit Court challenging the ordinance as being preempted by the SWMA, Mich.Comp. Laws § 299.430(4), as well as raising several other federal and state law counts.[2] Madison Heights removed this case to federal district court. Both parties then filed motions for summary judgment on the SWMA preemption issue. Madison Heights argued that while the SWMA does purport to preempt certain local regulation of solid waste disposal facilities, it is itself preempted in that regard by the Clean Air Act (CAA), 42 U.S.C. §§ 7401–7671q, and by the MAPA. The district court rejected these arguments, and found that the SWMA preempted the Madison Heights ordinance. This order was later made into a final judgment dismissing all other counts of SOCRRA's complaint by joint stipulation of the parties.

## II.

■ We review grants of summary judgment de novo. *Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). We may uphold the grant of summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988).

### A.

■ The Constitution and laws of the United States are the supreme law of the land, U.S. Const. art. VI, cl. 2; therefore, if state law conflicts with federal law, the state law is preempted. *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). Preemption will be found only if that is the "clear and manifest purpose of Congress." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). When Congress has not stated its intent to preempt expressly, such intent may be inferred from an actual conflict between the federal and state laws. *Cipollone v. Liggett Group, Inc.,* —— U.S. ——,

---

2. Section 299.430(4) states:

Following approval by the director of a county solid waste management plan and after July 1, 1981, *an ordinance, law, rule, regulation, policy, or practice of a municipality, county, or governmental authority created by statute, which prohibits or regulates the location or* *development of a solid waste disposal area, and which is not part of or not consistent with the approved solid waste management plan for the county, shall be considered in conflict with this act and shall not be enforceable.*

SWMA, Mich.Comp. Laws § 299.430(4) (emphasis added).

——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Wisconsin Pub. Intervenor v. Mortier,* —— U.S. ——, ——, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991). An actual conflict exists where compliance with both the federal and the state law is impossible, or where the state law stands as an obstacle to achievement of the goals of Congress. *Mortier,* —— U.S. at ——, 111 S.Ct. at 2482.

■ Section 299.430(4) of the SWMA preempts any local regulation of solid waste disposal facilities, such as the proposed waste-to-energy facility. *See Fort Gratiot Charter Twp. v. Kettlewell,* 150 Mich.App. 648, 655, 389 N.W.2d 468, *appeal denied,* 426 Mich. 867 (1986); *Weber v. Orion Bldg. Inspector,* 149 Mich.App. 660, 663, 386 N.W.2d 635, *appeal denied,* 425 Mich. 881 (1986); *Southeastern Oakland County Incinerator Authority v. Avon Twp.,* 144 Mich.App. 39, 42–46, 372 N.W.2d 678 (1985). Madison Heights argues, however, that the SWMA § 299.430(4) is itself preempted because it actually conflicts with certain sections of the CAA, which posit that the responsibility for air pollution abatement lies substantially with state and local legislatures, and that the CAA does not preclude state and local regulation of air pollution, so long as any state or local regulation is no less strict than federal standards. *See* CAA, 42 U.S.C. §§ 7401(a)(3) ("[A]ir pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments. . . ."), 7401(c) ("A primary goal of this chapter is to encourage or otherwise promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention."), 7416 (the CAA does not preclude states or political subdivisions thereof from adopting more stringent air pollution regulations), 7429(h)(1) (the CAA allows states and political subdivisions thereof to adopt more stringent solid waste incinerator standards). We disagree.

■ Even though the CAA certainly envisions a joint approach to air pollution abatement between federal, state, and local governments, *see Washington v. General Motors Corp.,* 406 U.S. 109, 115, 92 S.Ct. 1396, 1398–99, 31 L.Ed.2d 727 (1972); *Her Majesty The Queen v. Detroit,* 874 F.2d 332, 335–36 (6th Cir.1989), nowhere does the CAA affirmatively grant local governments the independent power to regulate air pollution. Rather, a local legislature's power to regulate in this area is subject not only to the minimum standards of the CAA, but also to limitations placed upon that power by the state. *Cf. Wisconsin Pub. Intervenor v. Mortier,* —— U.S. ——, ——, 111 S.Ct. 2476, 2483, 115 L.Ed.2d 532 (1991) (the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y, which allows state and local regulation of pesticides, "leaves the allocation of regulatory authority [between the state and the local governments] to the 'absolute discretion' of the States themselves . . ."). The CAA does not allow local ordinances to bypass an express limitation placed on local governments by a state. As stated by one court:

> [T]he congressional finding that state and local governments should have primary responsibility for controlling air pollution . . . is not a grant of power to local governments. Local governments are subordinate to the states; any grants of authority must come from the state legislatures, not from Congress. . . . If the state has preempted [the local ordinance], its validity cannot be saved by a grant of authority from Congress.

*Rhode Island Cogeneration Assocs. v. City of East Providence,* 728 F.Supp. 828, 833 n. 11 (D.R.I.1990) (citations omitted).

Here, Madison Heights's power to regulate is subject to the limitations of Michigan's state government. *See* Mich. Const. art. VII, § 22 ("Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law.*") (emphasis added); *City of Grand Haven v. Grocer's Coop. Dairy Co.,* 330 Mich. 694, 698, 48 N.W.2d 362 (1951); *Richards v. City of Pontiac,* 305 Mich. 666, 673, 9 N.W.2d 885 (1943); *Builder's Assn. v. City of Detroit,* 295 Mich. 272, 277, 294 N.W. 677 (1940); *National Amusement Co. v. Johnson,* 270 Mich. 613, 616, 259 N.W. 342 (1935) (provisions of a municipal ordinance which contravene state law are void). Michigan has placed an express limitation on Madison Heights's power to regulate the location of

incinerators by enacting § 299.430(4) of the SWMA, and that limitation is not preempted by the CAA.

## B.

■ Madison Heights next argues that § 299.430(4) of the SWMA is preempted by the MAPA, Mich.Comp. Laws § 336.36(1), which provides that the MAPA does not preempt local air pollution regulation so long as it is as strict or stricter than the standards required by the MAPA itself.[3] Madison Heights relies on this section in two different ways. First, Madison Heights contends that the SWMA has been amended to transfer all regulatory control over solid waste incinerators to the MAPA, citing SWMA, Mich. Comp. Laws § 299.422a(3).[4] Madison Heights argues that this amendment takes solid waste incinerators, like the proposed SOCRRA facility, from the regulation of the SWMA, and places them solely under the MAPA. Under this reasoning, § 299.430(4) of the SWMA does not apply here to preempt Madison Heights's ordinance; rather, § 336.36(1) of the MAPA governs and expressly allows it. SOCRRA counters that the amendment simply requires solid waste incinerators to comply with the MAPA to be authorized under the SWMA, but does not turn § 299.422a(3) of the MAPA into an exemption to § 299.430(4) of the SWMA.

We agree with the interpretation advanced by SOCRRA. Section 299.422a(3) of the SWMA simply transfers permitting power over solid waste incinerators to the MAPA; no solid waste incinerators may operate lawfully in Michigan until given a permit under the MAPA, a permit which also satisfies the requirements of the CAA. *See Her Majesty The Queen,* 874 F.2d at 337 ("[A] permit issued [under the MAPA] is designed to satisfy both federal and state air pollution requirements as they have been incorporated into the state's federally approved [State Implementation Plan under the CAA]".). Sec-

tion 299.422a(3) of the SWMA does not however allow local governments to escape the preemptive limitation of § 299.430(4) of the SWMA, and there is no reason to construe it otherwise.

Madison Heights argues secondly that § 336.36(1) of the MAPA standing alone conflicts with § 299.430(4) of the SWMA because the MAPA permits local regulation of air pollution sources while the SWMA precludes local legislation of solid waste incinerators, which is itself an air pollution source. Where two Michigan statutes conflict, the more specific of the two must prevail. *See Michigan v. Kelly,* 186 Mich.App. 524, 530, 465 N.W.2d 569 (1990); *In re Forfeiture of One 1987 Chevrolet Blazer,* 183 Mich.App. 182, 184, 454 N.W.2d 201 (1990); *Michigan v. Tucker,* 177 Mich.App. 174, 179, 441 N.W.2d 59, *appeal denied,* 433 Mich. 873 (1989). Whereas the MAPA generally allows local legislation in the area of air pollution abatement, the SWMA specifically limits local power in the area of solid waste disposal facilities. Because the SWMA establishes an express limitation on local power to regulate solid waste disposal facilities, we conclude that it is more specific than the MAPA's allowance of local regulation of air pollution. We therefore hold that § 299.430(4) of the SWMA controls here, and preempts the Madison Heights ordinance.

## III.

For the foregoing reasons, we **AFFIRM.**

---

3. Section 336.36(1) states:
   Nothing in this act or in any rule or regulation which shall be promulgated pursuant to this act shall be deemed to invalidate any existing ordinances or regulations having requirements equal to or greater than the minimum applicable requirements of this act or prevent any political subdivision from adopting similar provisions if their requirements are equal to or greater than the minimum applicable requirements of this act.
   MAPA, Mich.Comp. Laws § 336.36(1).

4. Section 299.422a(3) states:
   [A] disposal area that is an incinerator may, but is not required to, comply with the construction permit and operating license requirements of this act if both of the following conditions are met:
   (a) The operation of the incinerator does not result in the exposure of any solid waste to the atmosphere and the elements.
   (b) The incinerator has a permit issued under [the MAPA].
   SWMA, Mich.Comp. Laws § 299.422a(3).