**VIRGINIANS FOR DULLES et al.,
Plaintiffs,**

v.

**John VOLPE et al., Defendants.**

**Civ. A. No. 507–70–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

May 26, 1972.

Bernard S. Cohen, Cohen & Rosenblum, Alexandria, Va., Scott Lang, Environmental Defense Fund, Washington, D. C., for plaintiffs.

Joseph M. Spivey, III, T. S. Ellis, III, Hunton, Williams, Gay & Gibson, Richmond, Va., George Weisz, George J. Grumbach, Jr., Cleary, Gottlieb, Steen & Hamilton, New York City, for Airline defendants.

Frederick L. Miller, Jr., Asst. Atty. Gen., Land and Natural Resources Division, Department of Justice, Washington, D. C., Leonard Ceruzzi, Federal Aviation Administration, for United States.

## MEMORANDUM OPINION AND ORDER

ALBERT V. BRYAN, Jr., District Judge.

This suit is an action for injunctive and declaratory relief against a number of named defendants, but is basically against the Federal Aviation Administration (FAA) as operator of the Washington National Airport (WNA) and against the commercial airlines which operate jet aircraft at that airport. It involves alleged pollution from aircraft emissions and aircraft noise.

Originally the complaint contained a request for damages and allegations of conspiracy and violation of the anti-trust laws. These have been withdrawn.

The complaint is prolix and it is difficult to determine upon just what theories plaintiffs rely; however, during pretrial proceedings and at trial the following surfaced as the main theories:

(1) That the actions of the FAA have been arbitrary, capricious and constitute an abuse of discretion and therefore relief is warranted under 5 U.S.C. § 701 et seq. (Administrative Procedure Act).

(2) That the actions of the FAA violate both the procedural and substantive provisions of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq.

(3) That the actions of the FAA, acting through the defendant airlines, constitute a nuisance, depriving the plaintiffs of rights under the Fifth and Ninth Amendments to the United States Constitution.

Pursuant to the pretrial conference, the parties entered into a stipulation, which is attached to the original hereof and adopted as part of the Court's findings of fact. Also, by stipulation, affidavits of some experts and many lay witnesses for both plaintiffs and defendants were accepted in lieu of their live testimony. The direct testimony of nearly

all expert witnesses was presented by written report, furnished in advance to opposing counsel, and those witnesses were then made available for cross-examination.

The suit was instituted as a class action. No formal determination has been made that it may be so maintained. The allegations of the class at the beginning of the complaint are immensely broad. The action cannot be maintained for such a class. It became apparent during trial that there are a number of persons defined as some of the named plaintiffs and as those persons whose affidavits were presented on behalf of the plaintiffs, who live or work in the vicinity of the WNA and the flight paths of jet aircraft approaching and departing therefrom, and who present a claim that activities at the airport annoy, inconvenience and disturb them to the point of interfering with the comfortable enjoyment of their life and property. To the extent that the complaint undertakes to state a class action on behalf of persons other than that group, the Court cannot say that the named parties are representative of the class, since in the opinion of the Court this is basically a private nuisance action in which specific injury must be shown. Obviously many members of the larger class originally alleged make no complaint of injury or are not injured. There are substantial questions of fact not common to a class broader than the named plaintiffs and affiants. Allowing intervention by the affiants is more feasible than proceeding as a class. Although the action must be stripped of its character as a class action, enough of the named plaintiffs have presented their claims to enable the Court to decide the issues presented. Those named plaintiffs individually present a justiciable claim so that the standing of other named plaintiffs is immaterial.

The complaint requests the ultimate and prompt phasing out of all jet aircraft operations from the airport; however, at trial the thrust of plaintiffs' claim was to so reduce such operations so that they would no longer interfere with their comfortable enjoyment of their life and property. This was to be accomplished by diversion of air traffic elsewhere, particularly to Dulles International Airport (Dulles) or Friendship International Airport (Friendship), or both.

Evidence was adduced by the plaintiffs tending to show an evaluation of the airport in terms of a zone of environmental influence around WNA; adverse effects of noise on health; adverse effect of WNA on property values; measurements of noise at different locations on the ground; the advantages of expanding use at Dulles over modernization of WNA; under-utilization of Dulles at the expense of WNA; numerous violations of the voluntary curfew between 10:00 p. m. and 7:00 a. m.; the scheduling by the airlines of many flights (15 to 21) within a minute of 10:00 p. m., making it physically impossible to complete operations before the 10:00 p. m. curfew; numerous violations of the noise abatement procedures; futility of complaints to the FAA; interference with cultural, civic and personal use of property; and extreme annoyance and disturbance resulting from the noise of frequent and low flying jet aircraft.

From that evidence and the evidence of defendants the Court finds as follows:

A. That the NEF is a useful tool in planning, but is too imprecise for measuring, or even predicting with any degree of accuracy, the environmental impact on the community of aircraft noise or community response to that noise; that even using the NEF concept, the number of people within the NEF 30 contour around WNA is less than 3,000 and around Dulles more than 20,000;

B. That the evidence does not establish that noise from aircraft at WNA has any direct effect on the health of persons on the ground, health being defined as the absence of disease or infirmity;

■ C. That the evidence does not establish that noise from aircraft at WNA has an adverse effect on property values in the vicinity of the airport and the flight paths;

D. That the measurements conducted on the ground by Waters and Magrab are inconclusive, the samplings are unrepresentative, and in most instances the sounds measured were below the "threshold of annoyance" of 80 dBA;

E. That there has been adopted at WNA the following five limitations:

1. A noise abatement procedure which under normal conditions requires that jet aircraft departing WNA maintain takeoff power until an altitude of 1500 feet is reached, at which point aircraft flap settings are held constant and thrust reduced to a setting computed for hot day conditions at maximum cross takeoff weight to give approximately a 500 feet per minute climb. Unless otherwise directed by departure control the aircraft must follow the Potomac River. When landing and weather conditions permit the aircraft are directed to follow the natural flyways of the Potomac River and to remain at 3,000 feet or higher as long as possible;

2. A high density rule limiting the number of carrier operations (40 per hour) and the number of operations by general aviation (20 per hour);

3. A voluntary agreement between FAA and the defendant airlines forbidding the use of WNA by jet aircraft from 10:00 p. m. to 7:00 a. m.;

4. A perimeter restriction prohibiting scheduled non-stop service to and from points greater than 640 miles from Washington with the exception of seven grandfather cities;

5. Equipment restrictions applicable to jet aircraft using WNA;

F. That the violations *by the defendant airlines* of the voluntary curfew are the exception rather than the rule and are caused by scheduling practices, many of which are not completely within the control of the airlines but are dictated by customer preference, interrelation with schedules at other airports, weather and emergency conditions, and requirements of the U. S. Postal Service;

G. That violations of noise abatement procedures are minimal and are often caused by emergency or weather conditions; that operations to the south of the airport are guided in part by the necessity of avoiding Andrews Air Force base air traffic;

H. That there has been a good faith effort on the part of the airlines to comply with the above mentioned five limitations;

I. That community complaints, while often unsatisfactorily answered, have resulted in sincere efforts on behalf of the defendants to reduce noise levels emanating from the airport, specifically as represented by the above five limitations;

J. That noise from the airport has interfered with the use of the property of, and caused extreme annoyance and disturbance to, some of the named plaintiffs and those persons who have filed affidavits on behalf of the plaintiffs;

K. That, except for the 40 flight per hour density rule, these limitations are voluntary on the part of the airlines;

L. That there is a strong preference by the traveling public for WNA over Dulles; that there is a public interest to be served in having a short-haul airport convenient to downtown Washington, the Nation's Capital as well as a city of substantial size and business activity;

M. That scheduling is a complex matter which must accommodate competing interests such as impact on the community, economics of operation by the airlines, schedules at other airports, and convenience of the traveling public;

N. That any substantial diversion of jet aircraft from WNA would result in a severe economic setback to the region surrounding WNA;

O. That WNA is part of a national system of air transportation as well as a regional system involving Dulles and Friendship, and any substantial alteration of schedules or diversion of com-

mercial jet aircraft would have a serious impact on both systems;

P. That Dulles will in the near future reach its planned capacity and will then be incapable of absorbing any major diversion of jet aircraft from WNA without expansion of its facilities;

Q. That the aircraft industry as a whole is working to reduce aircraft noise; that marked advancement in noise reduction had been achieved in the last few years, some of which are presently in use; and that technology resulting in substantially lower noise levels without appreciable adverse effects on nearby residents will be available in 1977 or 1978;

R. That there are persons, represented by affidavits presented on behalf of the defendants, living in the vicinity of WNA or under its flight paths whose enjoyment of life and property is not interfered with or disturbed by operations at WNA.

Plaintiffs put on their evidence on noise pollution first. When they undertook to offer evidence on the subject of pollution from air emissions, the defendants objected on the ground that federal regulations and laws have preempted the field of federal common law of nuisance from air emissions. 42 U.S.C. §§ 1857f–9 to 1857f–12. Washington v. General Motors Corp., 405 U.S. 109, 92 S.Ct. 1396, 31 L.Ed.2d 727 (1972); Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Feeling that nuisance was the only real basis of relief for the plaintiffs, the Court sustained the objections.

Plaintiffs' three theories will be treated in order:

■ (1) *Relief under the Administrative Procedure Act (APA).* The question to be determined here is whether there has been an abuse of discretion by the FAA or that its actions are arbitrary or capricious. While sensing a certain timidity on the part of the FAA in enforcing operational guidelines for the airlines at the airport, (the evidence shows not a single instance of a pilot being disciplined for violation of a voluntary or regulatory limitation) the evidence does establish that in setting those guidelines the agency based its action or inaction on a consideration of the relevant factors of the traveling public's convenience, fostering growth of aviation, transportation needs, environmental impact on the community and safety. WNA is envisaged as a short-haul airport; Dulles a long-haul airport; and Friendship as a combination long-haul and short-haul airport. Whether or not the Court agrees with the agency actions in acquiescing in or not requiring more stringent rules than the five limitations enumerated above, the Court cannot say such action is a clear error of judgment warranting judicial relief under the APA. To enter this field would, in the Court's opinion, constitute a substitution of the Court's judgment for that of the agency, a substitution for which the Court has neither the expertise, the inclination, nor the right. On the question of the pervasiveness of federal regulation in the area of the 40 flight per hour density rule see Lockheed Air Terminal, Inc. v. City of Burbank, 457 F.2d 667 (9th Cir., 1972).

Accordingly, relief under the APA is denied.

(2) *The National Environmental Policy Act (NEPA).* The principal argument of the plaintiffs here is that the ongoing and future activities at WNA violate the declared public policy of the act that federal agencies minimize adverse effects upon the national environment and protect and preserve the same "to the fullest extent possible." More specifically plaintiffs say that introduction of the Boeing 727–200 jets, the so-called "stretch" jets, at WNA in 1968 was a "major action" requiring an environmental impact statement under § 102(2) (C) of the Act.

■ Insofar as the ongoing and future activities are concerned, the Court feels, at this stage certainly, they are outside the requirements of NEPA. The airport has certainly reached that stage of completion that "the costs already in-

curred" in adopting and using it as a commercial jet airport "so outweigh the benefits of altering or abandoning" it as such that "no feasible and prudent alternative to the use" would exist. Arlington Coalition v. Volpe, 458 F.2d 1323 (4th Cir., 1972). No case has yet held that NEPA's requirements apply to such an ongoing project, and this Court is unwilling to so hold. Moreover, I do not interpret § 101 of the Act as creating any substantive private right.

 The Court concludes that the introduction of the "stretch" jets into WNA in 1968 was not a "major action" as that term is used in § 102(2) (C). It bases this conclusion on its findings that the difference between the 727–200 (stretch jet) and 727–100 (the stretch jet's predecessor) is minimal insofar as "affecting the quality of human environment" is concerned. While it is fifteen to twenty feet longer and can carry 120 passengers as opposed to 98 for the 727–100, it is quieter, safer and rarely if ever loaded to a gross maximum weight greater than that of the 727–100. Moreover, the testimony establishes that a bigger aircraft does not, of itself, create more passenger traffic.

(3) *Fifth and Ninth Amendment right violations and nuisance.* These are treated together by the plaintiffs. They argue that injury to health (in violation of due process clause of Fifth Amendment) and the right or privacy and right not to be personally injured (Ninth Amendment) are involved here, as distinguished from the nuisance cases where only injury to property is at issue, and that consequently the doctrine of balancing of equities is inapplicable. Plaintiffs apply the proscription of these Amendments to the airlines because, they say, the airlines are the instrumentality by which the FAA creates a nuisance; and the airlines, through strict regulation by the FAA and Civil Aeronautics Board, have become, in effect, instrumentalities of the United States.

Plaintiffs would ideally define health in the euphoric terms of the World Health Organization—"A state of complete physical, mental, and social well-being, and not merely the absence of disease or infirmity." Realistically, however, they offered evidence of physical disease and infirmity being causally connected to the noise from WNA. This evidence, *insofar as it relates to the type of noise here perceived,* i. e., *on-the-ground noise from aircraft over-flights,* falls far short of a preponderance and does not persuade the Court. The noise is annoying, however. Even discounting to an extent some of the testimony because of possible oversensitivity of some witnesss, it is extremely annoying to and genuinely interferes with the comfortable enjoyment of the property of that segment of the population represented by some of the named plaintiffs and by those who have filed affidavits and who live in the vicinity of WNA and its flight paths.

The Court does not find that property values in those areas have declined as a result of airport operations. The expert on this subject, Gill, gave completely conclusory testimony in this regard, without any supporting facts or testimony showing comparisons with other areas uninfluenced by an airport. The lay witness, Madison, had actually made a profit on the sale of her home of approximately $4,720 within ten months.

Testimony was presented by the plaintiffs, through Dr. Dorn McGrath, a land use planner, concerning a zone of environmental influence surrounding WNA. He undertook to measure this by means of a standard called Noise Exposure Forecast (NEF), a computerized area arrived at after input of such things as frequency of flights, trip lengths, angles of descent and take-off, and time of day of flights. Within certain contour areas he testified certain community response could be predicted. While the NEF may be useful as a planning tool, there are too many variables left out of the input to make it sufficiently accurate for use in a court of law as a predictor of community response to noise.

The testimony that Dulles is underutilized at this time may well have merit, although the testimony indicates that it

is near its capacity at which time it will be unable to absorb any major diversion from WNA. This avenue of solving any problem at WNA, however, merely transfers the problem to somebody else's back yard. Forecasts indicate that in the near future the area around Dulles will be as impacted as that around WNA, and without the benefit of being partially surrounded by water as is the case at WNA. The area occupied by water around WNA is an area which might well be occupied by residences.

■ Plaintiffs presented no case of specific personal injury causally related to noise from WNA. Absent this and absent a finding of generalized injury to health or property from such noise, no Fifth or Ninth Amendment claim is, in the opinion of the Court, present. Plaintiffs concede that this would be the first court to sustain the contention that the Ninth Amendment (right of privacy or right to be free from injury) protects persons from noise. This circuit has declined the invitation to elevate to constitutional level the concerns for protection of the environment. Ely v. Velde, 451 F.2d 1130, 1139 (4th Cir., 1971).

■ Contrary to plaintiffs' position, the Court feels this is a case where balancing of the equities is applicable. Taking into account what the Court feels to be the relevant factors of traveling public convenience and service; economic impact on the community and on the airlines; the position of WNA in the whole scheme of national transportation; the environmental impact on the community; safety; and the position of aviation as a means of public transportation, relief must be denied the plaintiffs. Burdensome as it may be, plaintiffs must submit to the great annoyance in the public interest, an annoyance which is no more than that felt by that segment of the public which lives adjacent to other methods of public transportation, such as the heavily traveled interstate highway or frequently-used railroad track.

Moreover, there are other obstacles to relief for the plaintiffs. If, as the Supreme Court has said, albeit by dicta, in Washington v. General Motors Corp., *supra,* and Illinois v. City of Milwaukee, *supra,* federal regulations and laws have preempted the federal common law of nuisance so far as *emissions* from airplanes are concerned, the regulations and laws are at least as pervasive in the field of aircraft *noise.* 49 U.S.C. § 1431, 14 CFR Part 36. Surely the Administrator under that law will consider frequency of flights and duration of noise as well as noise levels themselves. In addition, it is extremely doubtful whether, under the doctrine announced in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and Ferris v. Wilbur, 27 F.2d 262 (4th Cir., 1928), an injunction can be awarded against the FAA in the exercise of what is here its discretionary functions.

The Complaint is dismissed; and it is so ordered.