**VIRGINIANS FOR DULLES** by Clive L. DuVal, etc., et al., Appellants,

v.

John VOLPE, Individually and as Secretary of Transportation, et al., Appellees.

No. 72–2029.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 12, 1975.

Decided June 2, 1976.

Geoffrey Judd Vitt, Alexandria, Va. (Bernard S. Cohen, Stephen D. Annand, Cohen & Vitt, Alexandria, Va., on brief), for appellants.

Dirk D. Snel, Atty., U. S. Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., William B. Cummings, U. S. Atty., Edmund B. Clark, Atty., U. S. Dept. of Justice, Washington, D. C., on brief), for federal appellees.

Lyman M. Tondel, Jr., New York City (George Weisz, George J. Grumbach, Jr., Cleary, Gottlieb, Steen & Hamilton, New York City, Joseph M. Spivey, III, T. S. Ellis, III, Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for airline appellees.

Before CLARK, Supreme Court Justice,* BUTZNER, Circuit Judge, and FIELD, Senior Circuit Judge.

BUTZNER, Circuit Judge:

Virginians For Dulles (VFD) appeals the dismissal of a suit which it, along with other citizens' groups and several individuals, brought against the Secretary of Transportation, the Administrator of the Federal Aviation Administration, the Director of Airport Services, and eleven major airlines to abate noise and air pollution from jet planes at Washington National Airport. The complaint charged that National was a nuisance because noise and emissions unreasonably interfered with plaintiffs' enjoyment of their property and deprived them of rights protected by the fifth and ninth amendments. The plaintiffs also alleged that the FAA violated the National Environmental Policy Act by failing to file environmental impact statements concerning its operation of National and Dulles International Airport and that the FAA acted arbitrarily and capriciously in violation of the Administrative Procedure Act. After an extensive evidentiary hearing, the district court denied relief on all grounds. *Virginians For Dulles v. Volpe,* 344 F.Supp. 573 (E.D.Va.1972). Only VFD has appealed. The airlines have moved to dismiss the appeal, asserting that the cause of action belongs solely to the individual plaintiffs, not to VFD. We grant the motion to dismiss in part, and we affirm the order of the district judge on all grounds except the need for an impact statement. On that issue we reverse and remand the case for further proceedings.

I

The plaintiffs sought to institute a class action to abate a nuisance at National. The district court ruled:

"To the extent that the complaint undertakes to state a class action on behalf of persons other than that group [of people who live or work near National], the Court cannot say that the named parties are representative of the class, since in the opinion of the Court this is basically a private nuisance action in which specific injury must be shown. Obviously many members of the larger class originally alleged make no complaint of injury or are not injured. There are substantial questions of fact not common to a class broader than the named plaintiffs and affiants. Allowing intervention by the affiants is more feasible than proceeding as a class. Although the action must be stripped of its character as a class action, enough of the named plaintiffs have presented their claims to enable the Court to decide the issues presented. Those named plaintiffs individually present a justiciable claim so that the standing of other named plaintiffs is immaterial." 344 F.Supp. at 575.

In sum, for purposes of these claims, the court treated VFD as a representative of the purported class and disallowed its effort to pursue the suit as a class action.

The court allowed individual plaintiffs and intervenors to present evidence about

the effect of aircraft noise on their health and property values. It found that the evidence failed to establish that the noise had a direct effect on the plaintiffs' health or an adverse effect on the value of their property.[1] Relying on *Washington v. General Motors Corp.,* 406 U.S. 109, 114, 92 S.Ct. 1396, 31 L.Ed.2d 727 (1972), it excluded evidence on pollution from aircraft emissions because federal laws and regulations have preempted that field.

No individual plaintiff has appealed the court's judgment against his claim. At the same time, VFD has not appealed the ruling that it could not assert the nuisance claims of its members. Thus, the denial of relief on the nuisance claims is not an issue on appeal, and to this extent we grant the airlines' motion to dismiss. *See Fed.R. App.P.* 28(a)(2) and (a)(4); *Mississippi River Corp. v. F.T.C.,* 454 F.2d 1083, 1093 (8th Cir. 1972); *United States v. White,* 454 F.2d 435, 439 (7th Cir. 1971); *United States v. Williams,* 378 F.2d 665, 666 (4th Cir. 1967); 9 Moore, Federal Practice ¶ 228.02 [2.–1] at 3755 (2d ed. 1973).

## II

The district court's ruling that VFD could not assert its members' nuisance claims was grounded on the individualized nature of those claims and the consequent inappropriateness of trying them in a class action. The court did not hold that VFD could not represent ·its members in their

effort to compel the FAA to prepare an environmental impact statement. The complaint sufficiently establishes VFD's standing to assert this issue, for it alleges that the association's members are adversely affected in their use of the areas near National and Dulles by the FAA's operation of the airports in violation of the National Environmental Policy Act. *See United States v. SCRAP,* 412 U.S. 669, 683–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Section 102(2)(C) of the Act, 42 U.S.C. § 4332(2)(C), requires federal agencies to prepare detailed statements showing the environmental impact of "major Federal actions significantly affecting the quality of the human environment" and alternatives to the proposed action.[2] VFD contends that this provision requires the FAA to file impact statements concerning its operation of Dulles and National because they are major federal actions that significantly affect the environment. The FAA argues that no impact statement is required because use of the airport has not significantly changed since the passage of the Act, and, therefore, no proposed major federal action within the meaning of the Act has occurred.

The district court, relying on our opinion in *Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323 (4th Cir. 1972), held that the Act's requirement of an impact statement did not apply to these airports. In *Arlington Coalition* we considered

---

1. The district court wrote before the Supreme Court decided *Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), which deals with the federal preemption of local and state regulation of aircraft noise.

2. Section 102(2)(C), 42 U.S.C. § 4332(2)(C), provides in part:

    "The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

    \*  \*  \*  \*  \*  \*

    "(C) include in every recommendation or report on proposals for legislation and other

major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

    (i) the environmental impact of the proposed action,

    (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

    (iii) alternatives to the proposed action,

    (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

    (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

whether the Act applies to current federal projects begun before its effective date. The specific question we addressed was whether an impact statement must be filed in connection with a highway to be built with federal funds when much of the initial planning had been done before passage of the Act. We held that an impact statement must be prepared but acknowledged that "Congress did not intend that all projects ongoing at the effective date of the Act be subject to the requirements of Section 102. At some stage of progress, the costs of altering or abandoning the project could so definitely outweigh whatever benefits that might accrue therefrom that it might no longer be 'possible' to change the project in accordance with Section 102."[3] Applying this standard, the district court found that since the cost of abandonment outweighed any environmental benefit, no impact statement was required concerning operation of the airports.

In *Arlington Coalition* we suggested a way of dealing with a situation where the only alternatives were completion or abandonment of a project. We recognized that in some situations it would make no sense to abandon a project, even though an impact statement might show that in retrospect it was unwise to have begun it. If the only alternative to the current level of operations at National were abandonment of the airport, then *Arlington Coalition* would indicate that no impact statement was required, *cf. Greene County Planning Board v. Federal Power Commission*, 455 F.2d 412, 424–25 (2d Cir. 1972). But VFD does not argue that the airport should be abandoned. It contends that an impact statement would show that changing the hours National is used and directing some traffic to Dulles would benefit the environment. VFD insists the benefit from these measures would outweigh their cost.

The district court did not rely exclusively on *Arlington Coalition*. It also held that the FAA's operation of the airports was not subject to the requirement of § 4332(2)(C) because no major federal action significantly affecting the environment had taken place since the passage of the National Environmental Policy Act. In reaching this conclusion the court examined the introduction of the Boeing 727–200 stretch jet and a curfew on night flights. The court found that neither of these were major federal actions significantly affecting the environment. Were these the only factors to be considered, the court's ruling might well dispose of this issue.

The facts stipulated by the parties, however, demonstrate that the FAA's activities do fall within the scope of § 4332(2)(C). These facts show that the population near the airports is growing and that the number of aircraft operations and passengers has steadily increased through the years. Moreover, the FAA forecasts that passengers will increase in number from 10,300,-000 in 1972 to 16,000,000 in 1980 at National and from 2,465,000 to 7,658,000 at Dulles. The parties also stipulated that in 1972 the FAA included $26,000,000 in its budget request as the federal government's share of "a major modernization of National."

We hold that the FAA's acquiescence in the vastly expanded use of the airports requires an impact statement. *Cf. Scientists' Institute For Public Information v. Atomic Energy Commission*, 156 U.S.App. D.C. 395, 481 F.2d 1079, 1088 (1973). This increased use will have a significant impact on the environment whether existing facilities are retained unchanged or modified to accommodate the expansion. The object of the Act is to require agencies to consider environmental values when making decisions. *See generally* H.R.Rep.No.378, 91st Cong., 1st Sess. (1969), Conf.Rep.No.765, 91st Cong., 1st Sess. (1969), 1969 U.S.Code Cong. and Admin.News, pp. 2751–73. This purpose would be largely defeated if the Act did not cover agency activities which began before 1970 and go on indefinitely.

---

3. *Arlington Coalition on Transportation v. Volpe*, 458 F.2d 1323, 1331 (4th Cir. 1972). *See also Sierra Club v. Callaway*, 499 F.2d 982, 988 (5th Cir. 1974); *Jones v. Lynn*, 477 F.2d 885 (1st Cir. 1973); *San Francisco Tomorrow v. Romney*, 472 F.2d 1021, 1025 (9th Cir. 1973); *Environmental Defense Fund v. Tennessee Valley Authority*, 468 F.2d 1164 (6th Cir. 1972).

That purpose would also be thwarted if the FAA were excused from filing a statement because changes in the impact of the airports on the environment originate with airlines and passengers.

■ Our conclusion that an impact statement is required finds support in the legislative history of the Act. According to the Senate Report, the requirement that an impact statement be filed is directed at remedying "present shortcomings in the legislative foundation of existing programs, and to establish action-forcing procedures which will help to insure that the policies [underlying the Act] are implemented . . . ." S.Rep.No.296, 91st Cong., 1st Sess. (1969) at 19. The report goes on to state that the "major actions" covered by § 4332(2)(C) include "project proposals, proposals for new legislation, regulations, policy statements, or expansion or revision of ongoing programs . . ." which "would have a significant effect upon the quality of the human environment." S.Rep.No.296 at 20. The House Committee was concerned that unless agencies were somehow forced to consider environmental factors in their decision making, "bureaucratic inertia" would frustrate the policies of the Act.[4] These expressions of legislative purpose and concern indicate that Congress wanted the agencies to address environmental consequences not only in considering future projects but also in reviewing their present policies and programs, at least when expanding or revising them.

The legislative history is reflected by the text of the Act and its interpretative guidelines. The declared congressional policy "to use all practicable means and measures . . . to create and maintain conditions under which man and nature can exist in productive harmony," 42 U.S.C. § 4331, al-lows no exception for pre-existing, continuing programs. The Act directed the creation of a Council on Environmental Quality, 42 U.S.C. § 4344, whose duties include assisting the President in developing programs to improve the environment. The Council has issued guidelines explaining the Act's requirements. Although only advisory, these guidelines are useful in interpreting the Act. See Greene County Planning Board v. Federal Power Commission, 455 F.2d 412, 421 (2d Cir. 1972). Section 1500.5 of the guidelines provides that the term "actions" includes "new and continuing projects." 38 Fed.Reg. 20551 (1973). This point is emphasized by Section 1500.13 of the guidelines which states:

"Agencies have an obligation to reassess ongoing projects and programs in order to avoid or minimize adverse environmental effects. The section 102(2)(C) procedure shall be applied to further major Federal actions having a significant effect on the environment even though they arise from projects or programs initiated prior to enactment of the Act on January 1, 1970 . . . ." 38 Fed.Reg. 20556 (1973).

The case law faithfully applies these precepts. See Minnesota Public Interest Research Group v. Butz, 498 F.2d 1314 (8th Cir. 1974); Sierra Club v. Morton, 395 F.Supp. 1187 (D.D.C.1975); Natural Resources Defense Council, Inc. v. Morton, 388 F.Supp. 829 (D.D.C.1974); Sierra Club v. Mason, 351 F.Supp. 419 (D.Conn.1972); Lee v. Resor, 348 F.Supp. 389 (M.D.Fla.1972); Note, 16 B.C.Ind. & Com.L.Rev. 663, 668–73 (1975).

The stipulated facts justify the conclusion that National and Dulles are continuing federal projects of such magnitude that changes in their operation wrought by expanded use will significantly affect the en-

---

4. In discussing a proposal that "environmental auditors" be attached to each agency, the House Report commented that such auditors could enable agencies

". . . to develop meaningful environmental policies at the lower decisionmaking levels of government, before the policy choices to be made by their chief executive officers have become so circumscribed ʾby internal momentum that the complete range of alternatives is no longer available to them. This phenomenon, sometimes termed 'bureaucratic inertia,' is troublesome, and has proved a source of major frustration to many previous administrations. . . ." H.R. Rep.No.378, 91st Cong., 1st Sess., 1969 U.S. Code Cong. and Admin.News, pp. 2751, 2757.

vironment.[5] There are, of course, alternatives to the present mode of operation short of abandonment. Accordingly, to comply with § 4332(2)(C), the FAA must file an impact statement concerning its operation of National and Dulles Airports.[6]

## III

Virginians For Dulles also contends that the FAA violated the Administrative Procedure Act by condoning evasion of a 10:00 p. m. flight curfew, by introducing the Boeing 727–200 jet, by improperly implementing a high density rule that limits scheduled flights at National to forty per hour, and by failing to disseminate information about its noise abatement policy. The district court properly decided that these charges do not warrant the conclusion that the agency abused its discretion or acted arbitrarily or capriciously in violation of 5 U.S.C. § 706(2)(a). It found that the agency considered the "relevant factors of the traveling public's convenience, fostering growth of aviation, transportation needs, environmental impact on the community and safety." 344 F.Supp. at 577. Since the court's ruling is supported by the evidence, we find no error.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs.

---

5. Unlike other commercial airports, National and Dulles are owned and operated by the federal government. Our opinion does not decide whether an impact statement must be filed when the federal government appropriates money for expansion of airports operated by other public or private bodies.

6. The FAA has already prepared a draft impact statement. *See* 38 Fed.Reg. 2711 (1973).