[Civ. No. 16142. Fourth Dist., Div. One. Feb. 18, 1977.]

SAN DIEGO UNIFIED PORT DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ROGER A. BRITT et al., Real Parties in Interest.

■■■■■■■■■■■■

COUNSEL

Luce, Forward, Hamilton & Scripps, Louis E. Goebel, Michael S. Gatzke, Ronald W. Rouse and Walter J. Cummings III for Petitioner.

Burt Pines. City Attorney, Lawrence M. Nagin and James H. Pearson, Assistant City Attorneys, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Fadem, Berger, McIntire & Norton, Michael M. Berger and Patsy Huniston Carter for Real Parties in Interest.

Evelle J. Younger, Attorney General, and Larry C. King, Deputy Attorney General, as Amici Curiae on behalf of Real Parties in Interest.

OPINION

AULT, J.—

INTRODUCTION

A group of homeowner-plaintiffs (Britt)[1] is seeking damages on various theories from the San Diego Unified Port District (Port District), the operator of San Diego International Airport (Lindbergh Field). Before this court, the parties are engaged in two theaters of litigation. This proceeding (4 Civ. No. 16142) is a challenge to an order overruling a general demurrer to causes of action in nuisance, negligence, trespass and failure to obtain a state operating permit. The other proceeding (4 Civ. No. 16053), retransferred to this court by the Supreme Court for hearing, challenges on First Amendment grounds the denial of an order protecting Britt from discovery. Except for the possibility the sustaining of demurrers to the tort causes of action might render moot the discovery question, the two proceedings are unrelated.

THE ACTION

Plaintiffs allege in count 1 the operation of Lindbergh Field by the Port District has so interfered with their ownership rights as to constitute a taking of their property for public use within the meaning of the federal and state Constitutions. They claim such interference, usually

---

[1]Plaintiffs are 936 individuals and one church. They brought two actions, Britt, et al, v. San Diego Unified Port Dist., San Diego Superior Court No. 367963, and Banks, et al., v. San Diego Unified Port Dist., San Diego Superior Court No. 379755, which were consolidated by the superior court.

■■■■■■

referred to as inverse condemnation, entitles them to just compensation. The Port District does not contest the overruling of its demurrer to this count, accepting for the purposes of these proceedings that if a taking has occurred the Port District is the responsible entity.[2]

In addition, plaintiffs seek recovery for both property damage and personal injury on theories of nuisance (counts 3 and 4), negligence (counts 5 and 6), trespass (counts 7 and 8), and failure of the Port District to obtain a proper state operating permit (counts 9 and 10). The respondent court overruled a general demurrer to these counts (3 through 10) and it is that action which is contested in this petition by the Port District. Other remaining counts (13 and 14), for breach of contractual obligations to a third party beneficiary under contracts between the Port District and the FAA, are not at issue.

## ISSUE

The issue presented is whether federal law in the field of aircraft noise regulation preempts all state and local controls and therefore precludes civil actions against airport operators based upon common law or statutory causes of action.

## DISCUSSION

A. *Propriety of reviewing the question on petition for prerogative writ.*

Only with "extreme reluctance" are prerogative writs employed to afford intermediate review of rulings on pleadings (*Babb* v. *Superior Court,* 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]). " 'In most . . . cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment.' " (*Id.,* quoting *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) Nevertheless, in circumstances of a "grave nature" or of "significant legal impact," appellate courts may be compelled to intervene through the issuance of an extraordinary writ (*Babb* v. *Superior Court, supra,* 3 Cal.3d 841, 851).

The issue presented is a significant question of law. If the respondent court erroneously permitted tort causes of action to be pursued,

[2]See *Griggs* v. *Allegheny County,* 369 U.S. 84 [7 L.Ed.2d 585, 82 S.Ct. 531]. But see Note, *Shifting Aircraft Noise Liability to the Federal Government,* 61 Va.L.Rev. 1299.

substantial discovery and trial expenses are needlessly imposed on the Port District (directly) and the public (indirectly). The difference between the action as it stands, requiring discovery of the medical histories of hundreds of individual plaintiffs, and the action as the Port District contends it *should* stand, requiring "merely" appraisal of about 200 parcels of property, is spacious. In the memorandum of points and authorities in opposition to the petition, Britt argues only that the respondent court correctly decided the issue on its merits and nowhere suggests review should be deferred until appeal from judgment.[3] For these reasons our intervention by issuance of an order to show cause was justified.

B. *Merits.*

1. Contentions.

The Port District summarizes its argument as follows:

"1. Federal legislation and authorized agency regulation in the field of aircraft and airport noise is so pervasive that it has preempted all state and local controls. *City of Burbank* v. *Lockheed Air Terminal* (1973) 411 U.S. 624, 638, 93 S.Ct. 1854 . . . . The multitude of interrelated considerations in this field permits only a uniform and exclusive system of Federal regulation. *Id.,* 411 U.S. at 639.

"2. This preemption precludes not only local regulation by legislative action, but regulation by local judicial action as well. *E.g., Luedtke* v. *County of Milwaukee,* 371 F.Supp. 1040, 1044 (E.D.Wis. 1974), *aff'd,* 521 F.2d 387, 390-391.

"3. The tort counts (Counts 3-10) of plaintiffs' complaint require adjudication of the 'reasonableness' of conduct in the operation of Lindbergh Field. These counts require the respondent Court to adjudicate questions of whether or not noise impact on plaintiffs resulting from jet aircraft operations at Lindbergh Field, if any, could be reduced by changes in specific operational procedures.

"4. The awarding of money damages is every bit as much a regulation of conduct by a court as the exercise of its equitable jurisdiction to regulate by injunction. *E.g., San Diego Bldg. Trades Council* v. *Garmon* (1959) 359

---

[3]See 5 Witkin, California Procedure (2d ed. 1971) Extraordinary Writs, section 43, page 3817.

U.S. 236, 246-247, 79 S.Ct. 773. . . . Indeed, plaintiffs' request for money damages under the tort counts is merely a back door approach to placing airport operational procedures under judicial control and direction.

"5. The inverse condemnation count is not directly affected by this federal preemption because:

"a. If there is judicial determination that the level of interference with plaintiffs' properties is sufficiently great to constitute a 'taking' under the Fifth and Fourteenth Amendments, (*United States* v. *Causby* (1945) 328 U.S. 256, 66 S.Ct. 1062 . . .) they are entitled to 'just compensation' because Congressional or agency action may not operate to deprive citizens of *constitutional* rights; and,

"b. Inverse condemnation as a legal theory of recovery does not require adjudication of the conduct of airport operational procedures. Essentially, it only requires findings of a substantial interference with private property for public purposes and a diminution in the market value of the property."

Britt responds in essence the duty of an airport proprietor, as land occupier, to operate airport facilities nontortiously is unaffected by cases recognizing federal preemption in the field of noise regulation. Distinction is drawn between the exercise of *police power* by a municipality to control airport noise and the exercise of *proprietary power* by the owner-operator of an airport.

2. Discussion.

a. Federal Law.

The seminal case in the area of federal preemption of airport noise regulation is *City of Burbank* v. *Lockheed Air Terminal,* 411 U.S. 624 [36 L.Ed.2d 547, 93 S.Ct. 1854]. Both parties rely on this case in support of their positions and claim it disposes of the issue at bar.

In *Burbank* the owner-operator of the Hollywood-Burbank Airport brought suit in federal court against the City of Burbank to enjoin enforcement of a *city ordinance* forbidding any pure jet aircraft from taking off from the airport between 11 p.m. of one day and 7 a.m. of the next, and forbidding the airport operator from permitting any such

takeoffs. The district court enjoined enforcement of the ordinance, and the Court of Appeals for the Ninth Circuit affirmed. In a five-to-four decision, the United States Supreme Court affirmed, holding "FAA, now in conjunction with EPA, has full control over aircraft noise, pre-empting state and local control." (*Id.*, p. 633 [36 L.Ed.2d P. 553, 93 S.Ct. p. 1859].)

The United States Supreme Court expressly left open what limits, if any, apply to the exercise of proprietary rights by a municipality which owns and operates an airport. In a controversial footnote the court explained:

"The letter from the Secretary of Transportation also expressed the view that 'the proposed legislation will not affect the rights of a State or local public agency, *as the proprietor of an airport,* from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners *acting as proprietors* can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory.' (Emphasis added.) This portion as well was quoted with approval in the Senate Report. *Ibid.*

"Appellants and the Solicitor General submit that this indicates that a municipality with jurisdiction over an airport has the power to impose a curfew on the airport, notwithstanding federal responsibility in the area. But, we are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power. While the Hollywood-Burbank Airport may be the only major airport which is privately owned, many airports are owned by one municipality yet physically located in another. For example, the principal airport serving Cincinnati is located in Kentucky. Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power. We do not consider here what limits, if any, apply to a municipality as a proprietor." (*Id.*, p. 635, fn. 14 [36 L.Ed.2d p. 555, 93 S.Ct. p. 1861].)

Britt contends the Court in *Burbank* expressly "acknowledged that the *operator* of an airport *does* have the power to issue regulations." Since this is so, the conduct of the Port District as operator of Lindbergh Field is not shielded by federal preemption; its alleged impotence to impose reasonable noise controls is illusory, and it should be held responsible for

its tortious conduct. Such an interpretation of footnote 14 ignores the rationale of the text of the opinion.

A majority of the Supreme Court reasoned in *Burbank* the interdependence of such concerns as safety, efficiency and noise control "requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." (*Id.,* pp. 638-639 [36 L.Ed.2d p. 557, 93 S.Ct. p. 1862].) If a curfew interferes with this perceived requirement of uniformity, it should make no difference whether the curfew is imposed on the authority of local police power or the owner's proprietary power. The impact of the curfew remains the same—interference with flight schedules at other airports and local flight congestion immediately before and after the hours of curfew.

Britt thus offers an anomaly: a municipality or governmental agency may impose noise regulations in its capacity as airport proprietor which it could not impose under its police power. Even though the District Court for the Northern District of California has very recently reached such a conclusion in *National Aviation* v. *City of Hayward, Cal.,* 418 F.Supp. 417, we doubt the Supreme Court intended such a result.

The *Burbank* Court acknowledged "the Hollywood-Burbank Airport may be the only major airport which is privately owned." (*City of Burbank* v. *Lockheed Air Terminal, supra,* 411 U.S. 624, 635, fn. 14 [36 L.Ed.2d 547, 555, 93 S.Ct. 1854, 1861].) The vast majority of national airports are operated by municipalities or governmental entities such as the Port District. If the limitation of footnote 14 is construed as Britt suggests, local regulation by municipal airport "proprietors" would not be preempted by federal law, and "*Burbank* becomes a decision of nearly unique application" (Warren, *Airport Noise Regulation: Burbank, Aaron,* and *Air Transport,* 5 Environmental Aff. 97, 106, fn. 56). "If the great bulk of airport noise cases are not to be affected, . . . the rationale of *Burbank* is defeated" (*Id.,* p. 106).

The Port District focuses on the reasoning of the *Burbank* case. Counsel contends federal preemption of the field of airport noise regulation leaves no room for local controls—including civil tort actions for money damages. Relying primarily upon *San Diego Unions* v. *Garmon,* 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the Port District urges the awarding of money damages is as much a regulation of conduct

as an injunction or legislative activity. In *San Diego Unions,* the United States Supreme Court stated: "Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." (*Id.,* pp. 246-247 [3 L.Ed.2d p. 784, 79 S.Ct. 780].) The Port District urges if money damages were to be awarded in this action, it would be punished for conduct which is essentially within federal jurisdiction. If juries in 50 states are permitted to assess the reasonableness of the operation of airports, it would be impossible to attain a national uniform scheme of airport noise regulation. This conclusion seems correct.

The Port District adamantly urges *Luedtke* v. *County of Milwaukee,* 521 F.2d 387, is indistinguishable from this action. In that post-*Burbank* case, property owners were suing the County of Milwaukee, as *owner and operator* of General Mitchell Field, the major Milwaukee airport, and five federally certified airlines which utilized the airport facilities. The plaintiffs charged that aircraft, in taking off and landing at Mitchell Field, flew over their property at low altitudes, causing noise, vibration, fumes and the dropping of dust and noxious substances on their property. The plaintiffs claimed the defendants deprived them of their property without just compensation in violation of the Constitution. In addition, they claimed the defendants created a nuisance in violation of state law. "As relief, the plaintiffs [sought] actual and punitive damages, a mandatory injunction directing the County to initiate condemnation proceedings against their property, and a promulgation, by the district court, of rules and regulations to govern the aircraft and airport operations at Mitchell Field." (*Id.,* p. 389.)

The district court granted defendant's motion to dismiss the complaint. On appeal the United States Court of Appeals for the Seventh Circuit acknowledged the right of the plaintiffs to seek inverse condemnation damages, but rejected their claims for injunctive relief and tort damages. The court stated:

"The district court properly held that relief in the form of judicially-made rules and regulations to govern the airport and airline operations

at Mitchell Field was not available to the plaintiffs. In *City of Burbank* v. *Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), the Supreme Court held that the Federal Aviation Administration (FAA), in conjunction with the Environmental Protection Agency (EPA), 'has full control over aircraft noise, pre-empting state and local control.' 411 U.S. at 633, 93 S.Ct. at 1859. '[T]he pervasive control vested in EPA and in FAA under the [Noise Control Act of 1972] leave[s] no room for local curfews or other local controls.' 411 U.S. at 638, 93 S.Ct. at 1862. The Court has similarly noted that in the area of aircraft emissions, Congress 'has also pre-empted the field.' *Washington* v. *General Motors Corp.,* 406 U.S. 109, 114, 92 S.Ct. 1396, 31 L.Ed.2d 727 (1972). See *Virginians for Dulles* v. *Volpe,* 344 F.Supp. 573, 579 (E.D. Va. 1972). As the court below recognized, it is irrelevant that the plaintiffs here are asking a federal district court, rather than a state body, to promulgate the rules governing Mitchell Field. The rules and regulations which the plaintiffs seek would, nonetheless, result in the type of local control which the Supreme Court in *Burbank* found to be invalid.

"·  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The remainder of the plaintiffs' claims charge both defendants with common law nuisance and negligence and violation of § 114.04 of the Wisconsin Statutes, which makes it unlawful, *inter alia,* for an aircraft to fly 'at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner.' These claims are apparently based on pendent jurisdiction. The district court held that even if it were to consider these allegations, see *United Mine Workers* v. *Gibbs,* 383 U.S. 715, 725-26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the plaintiffs' action on these counts could not be maintained. We agree.

"Since the federal laws and regulations have preempted local control of aircraft flights, *Burbank, supra,* the defendants may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance. Similarly, § 114.04 of the Wisconsin Statutes cannot be invoked to make unlawful flights which are in accordance with federal laws and regulations. If, as the plaintiffs allege, the aircraft flights have resulted in the 'taking' of their property, the plaintiffs have actions at law to recover just compensation from the County. *Griggs, supra;* . . . To the extent that the County may be violating the federal laws or regulations, the plaintiffs should, as explained. . . ,

exhaust their administrative remedies." *Luedtke* v. *County of Milwaukee, supra,* 521 F.2d 387, 390-391.) Since the tort causes of action were dismissed against the County of Milwaukee, as owner and operator of General Mitchell Field, as well as against the airline defendants, the case is factually on point. Britt's attempt to distinguish *Luedtke* is disingenuous.

■  The Port District correctly points out a decision of a lower federal court on a federal question, though not binding, is "persuasive and entitled to great weight" (*People* v. *Bradley,* 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129]; see also 16 Cal.Jur.3d, Courts, § 157, p. 288). The persuasiveness of the *Luedtke* decision is somewhat diminished, however, by the court's use of the *Burbank* case to dismiss causes of action against two different types of defendants, the airport operator and the airlines, without distinction. In fact, the *Burbank* case involved an attempted exercise of police power by a nonproprietary city, and the Supreme Court expressly declined to consider what controls might be imposed by the owner-operator of an airport.

Two other recent federal decisions, *Air Transport Association of America* v. *Crotti,* 389 F.Supp. 58, and *National Aviation* v. *City of Hayward, Cal., supra,* 418 F.Supp. 417, bear on the issue of preemption. In *Crotti* an association of air carriers sued the managing officials of major California airports seeking a declaratory judgment that state noise regulations adopted pursuant to the state Public Utilities Code were invalid. The challenged regulations were of two types: (1) Community Noise Equivalent Level (CNEL) standards, which prescribed for continued operation of airports with monitoring requirements aimed at achieving a future maximum noise level, and (2) Single Event Noise Exposure Level (SENEL) standards, which were prohibitions applied to the inseparable feature of noise generated by an aircraft engaged in flight.

The association's position narrowed "to the simple contention that any control and regulation of the levels of noise generated by aircraft in direct flight is preempted by the federal government" (*Air Transport Association of America* v. *Crotti, supra,* 389 F.Supp. 58, 62), and the CNEL standards and related monitoring requirements and SENEL prohibitions were therefore void.

The district court found this argument to be overbroad:

"We believe that the Airlines' total reliance upon *Burbank* is misplaced. The factual picture supporting *Burbank* is of narrow focus, a single

police power ordinance of a municipality—not an airport proprietor—intending to abate aircraft noise by *forbidding* aircraft flight at certain night hours. The holding in *Burbank* is limited to that proscription as constituting an unlawful exercise of police power in a field pre-empted by the federal government, and we take as gospel the words in footnote 14 in *Burbank*: '[A]uthority that a municipality may have as a landlord is not necessarily congruent with its police power. *We do not consider here what limits, if any, apply to a municipality as a proprietor.*' (Emphasis supplied.)

"It is now firmly established that the airport proprietor is responsible for the consequences which attend his operation of a public airport; his right to control the use of the airport is a necessary concomitant, whether it be directed by state police power or his own initiative." (*Id.,* pp. 63-64.)

The court then concluded the CNEL monitoring procedures, which were "a passive function" "innocuous to aircraft traffic" and not in direct conflict with federal regulations, were not affected by the *Burbank* case. The court ruled: "The State dictated employment of shielding and ground level facility configurations, as well as development of compatible land uses under the provisions of CNEL, is so patently within local police power control and beyond the intent of Congress in the federal legislation that further discussion would be wasteful." (*Id.,* p. 65.)

However the Court held: "The SENEL provisions and regulations are not so favored. We are satisfied and conclude that the SENEL provisions and regulations of noise levels which occur when an aircraft is in direct flight, and for the levying of criminal fines for violation, are a per se unlawful exercise of police power into the exclusive federal domain of control over aircraft flights and operation, and air space management and utilization in interstate and foreign commerce. The thrust of the Single Event Noise Exposure Levels is clear and direct and collides head-on with the federal regulatory scheme for aircraft flights delineated by and central to the *Burbank* decision." (*Id.,* p. 65.)

This application of the "proprietor exception" of the *Burbank* case achieves some accommodation between state and federal interests. The court focused not on whether police or proprietary power was being exercised, but rather on the activity regulated. The CNEL regulations, which dealt with ground noise level management through land use planning, were not preempted; the SENEL regulations, which sanctioned the noise levels of aircraft themselves, were preempted. Airport

land and facilities use (proprietary functions) were subject to local regulation, but noise emanating from aircraft in flight (federally regulated) was not.

In *National Aviation* v. *City of Hayward, Cal., supra,* 418 F.Supp. 417, four related commercial airlines sought to have a City of Hayward ordinance declared unconstitutional. The challenged ordinance, expressly enacted pursuant to the city's authority as owner, operator and proprietor of its local airport, prohibited all aircraft in excess of a fixed decibel level from landing or taking off from the Hayward Air Terminal between the hours of 11 p.m. and 7 a.m. The district court defined its task at the outset: "[T]he *Burbank* court's finding of preemption was made only with regard to a nonproprietor municipality's attempt to regulate aircraft noise pursuant to its police power. Indeed, in footnote 14 of the majority opinion, Mr. Justice Douglas expressly acknowledges that the court 'do[es] not consider here what limits, if any, apply to a municipality as a proprietor.' 411 U.S. at 635-36 n. 14, 93 S.Ct. at 1161. As a result, this court must now attempt to do so." (*Id.,* p. 421.) There was no doubt if the ordinance had been passed by a local government *not* the proprietor of the airport, it would run afoul of *Burbank* and would constitute an impermissible exercise of police power in an area preempted by Congress.

The Court found itself " . . . caught on the horns of a particularly sharp dilemma: If on one hand, we follow the dicta in footnote 14 of the *Burbank* opinion, which is intended to comport with the court's holding in *Griggs,* we will severely undercut the rationale of *Burbank's* finding of preemption. If on the other hand, we disregard the proprietor exception as dicta in order to fully effectuate the *Burbank* rationale, we impose upon airport proprietors the responsibility under *Griggs* for obtaining the requisite noise easements, yet deny them the authority to control the level of noise produced at their airports." (*Id.,* p. 424.)

The dilemma was resolved in favor of the ordinance for two reasons. First, the court interpreted *Air Transport Association of America* v. *Crotti, supra,* 389 F.Supp. 58, 63-64, as holding "proprietorship control is recognized and exempted from judicially declared federal pre-emption by [*Burbank's*] footnote 14." The language quoted does not comport precisely either with footnote 14 or with what the court deciding *Crotti,* actually did. The court in *Burbank* said merely: "*We do not consider here what limits, if any, apply to a municipality as a proprietor.*" (Italics

added.) That is a far cry from, "No limits apply to a municipality as a proprietor." Furthermore, both the CNEL and SENEL regulations considered in *Crotti* were exercises of state police power, rather than proprietary power. If the category of power exercised were dispositive, as the *National Aviation* court implies, both types of regulation should have fallen. Instead, the *Crotti* court focused on the nature of the regulation, i.e., land management versus air space management.

The second basis for upholding the ordinance was the clear expression of congressional intent *not* to " 'prevent airport proprietors from excluding any aircraft on the basis of noise considerations.' " (*National Aviation* v. *City of Hayward, Cal., supra,* 418 F.Supp. 417, 424, quoting Sen.Rpt. No. 1353, 90th Cong., 2d Sess., p. 7.)

The result reached in *National Aviation* v. *City of Hayward, Cal., supra,* severely undercuts the *Burbank* decision. Five members of the Supreme Court found the Burbank ordinance incompatible with a perceived need for a uniform and exclusive system of federal aircraft noise regulation. The City of Hayward ordinance seems equally incompatible; yet it was permitted to stand as an exercise of proprietary power.

   b. State Law.

Britt adduces several California cases in support of the respondent court's overruling of the demurrers. For diverse reasons, reliance upon these cases is misplaced.

In *Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582 [39 Cal.Rptr. 705, 394 P.2d 548], Britt contends, the Supreme Court held that while airlines could not be prohibited from flying, damages could be sought from the airport's owner-operator on a nuisance theory.[4] Although the California Supreme Court did reject the airlines' claim of federal preemption, the short answer to *Loma Portal,* the Port District retorts, is that the case was decided nine years before *Burbank.* In rejecting federal preemption the California Court noted: "A holding of federal preemption would have the effect of disabling the state from any action in the entire field, and placing in the federal government complete

---

[4]In fact the holding was more narrow. The operator of the field was *not* a party to the action. The court stated merely: "Nothing herein is intended to be a determination of the rights of landowners who suffer from airplane annoyances to seek damages from the owners or operators of aircraft or to seek compensation from the owner or operator of an airport." (*Id.,* pp. 590-591.)

and sole responsibility for regulation of all aspects of that field. Such a holding by a single state court would have, of course, no effect on the conduct of other states with respect to regulation of that field, and unless Congress had in fact intended such preclusion of state regulation and were to carry out its responsibilities, there would result within that state a lacuna which the state would be powerless to fill. As was said in *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. 502, 505 [82 S.Ct. 519, 7 L.Ed.2d 483], quoting from the opinion of the Massachusetts Supreme Judicial Court: 'In the absence of a clear holding by the Supreme Court of the United States that Federal jurisdiction has been made exclusive, we shall not make what would be tantamount to an abdication of the hitherto undoubted jurisdiction of our own courts.' " (*Loma Portal Civic Club* v. *American Airlines, Inc., supra*, 61 Cal.2d 582, 591.)

*Nestle* v. *City of Santa Monica*, 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480], Britt notes, was a case brought by hundreds of individual plaintiffs against the City of Santa Monica as operator of the Santa Monica Airport. The plaintiffs were permitted to go forward on four theories: inverse condemnation, nuisance, negligence and zoning violations. The Port District correctly responds (1) *Nestle* was decided approximately one year before *Burbank*, and (2) governmental immunity under state law, and *not* federal preemption, was at issue.

In *City of San Jose* v. *Superior Court*, 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701], Britt claims, the Supreme Court noted that a nuisance action can be maintained against a public airport. In fact, the court nowhere addressed federal preemption in that case and was concerned solely with class action issues. Although *San Jose* was decided after *Burbank*, it cannot fairly be said to be, as Britt argues, the "current law of California" on issues not contested.

In *Aaron* v. *City of Los Angeles*, 40 Cal.App.3d 471 [115 Cal.Rptr. 162], homeowner plaintiffs successfully sought inverse condemnation damages for harm caused by air traffic at Los Angeles International Airport. The court rejected the city's contention that federal preemption precluded local regulation of airport noise and absolved the city of responsibility for the interference with plaintiffs' use and enjoyment of their property caused by air traffic. The court noted nothing in *Burbank* relieved airports of the duty to appropriate necessary land and air easements (*id.*, p. 489; see *Griggs* v. *Allegheny County, supra*, 369 U.S. 84). The Port District accurately replies: "What is significant about *Aaron* is that the

case was tried, and discussed on appeal, solely upon an inverse condemnation theory of recovery. The Court of Appeal, commencing at page 487 of its opinion, pointed out that Federal pre-emption would not obviate the responsibility of the airport operator to compensate private property owners (as required by the Constitution) for any *taking* of their property for airport operations, citing *Griggs* v. *Allegheny County, supra.* That is, of course, consistent with the position which has been taken by the Port District in this petition. *Aaron* did *not* discuss the effect of Federal preemption on tort theories of recovery requiring adjudication of airport operational procedures."

### CONCLUSION

We conclude the plaintiffs may not recover tort damages from the Port District for harm caused by aircraft in flight. Of the federal decisions which have dealt with the authority of airport proprietors after *Burbank,* .we accept the reasoning of the court in *Air Transport Association of America* v. *Crotti, supra,* 389 F.Supp. 58, which distinguished between airport land and facility use (held subject to local regulation) and aircraft in flight (held subject to federal regulation only). To authorize recovery from the proprietor of an airport for injuries caused by aircraft in flight would permit local liability for conduct within exclusive federal control.[5]

It is no rebuttal to this reality to argue that the Port District could. reduce or avoid its tort liability by selectively or entirely excluding aircraft from Lindbergh Field. Such regulations to avoid tort liability would have the same deleterious effect on interstate air traffic flow as the Burbank ordinance.[6] In our view, civil damages for the noxious by-products of aircraft in flight, like the Burbank ordinance and like the

[5]" 'Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls.' " (*City of Burbank* v. *Lockheed Air Terminal, supra,* 411 U.S. 624, 633-634 [36 L.Ed.2d 547, 554, 93 S.Ct. 1854, 1860], quoting *Northwest Airlines* v. *Minnesota,* 322 U.S. 292, 303 [88 L.Ed. 1283, 1290, 64 S.Ct. 950, 153 A.L.R. 245] [Jackson, J., concurring].)

[6]"If we were to uphold the Burbank ordinance and a significant number of municipalities followed suit, it is obvious that fractionalized control of the timing of take offs and landings would severely limit the flexibility of the FAA in controlling air traffic flow. The difficulties of scheduling flights to avoid congestion and the concomitant decrease in safety would be compounded. In 1960 FAA rejected a proposed restriction on jet operations at the Los Angeles airport between 10 p.m. and 7 a.m.

SENEL regulations invalidated in *Crotti,* are a form of state regulation in an area which must remain free of such regulation if national air safety, traffic and noise policy are to be left unhampered.

Plaintiffs have not alleged that the flying aircraft about which they complain did not comply with federal laws and regulations. Since federal laws and regulations have preempted local control of aircraft in flight, flights which comply with such laws and regulations may not be classified as negligent, nuisances or trespasses, and the Port District cannot be held liable for tort damages alleged to arise from them. To the extent such flights may have resulted in the "taking" of their property, plaintiffs are relegated to a recovery of just compensation in inverse condemnation against the Port District (*Luedtke* v. *County of Milwaukee, supra,* 521 F.2d 387, 391; see also *Griggs* v. *Allegheny County, supra,* 369 U.S. 84).

However, nothing in the *Burbank* decision suggests an airport operator is relieved by federal law of the common law duty to act nontortiously as a proprietor. If the Port District has tortiously managed and maintained the facilities at Lindbergh Field to the harm of some or all of the plaintiffs, the action is not precluded by the doctrine of federal preemption.

Since the allegations in the complaint seek recovery for harm caused by proprietary actions and omissions as well as for harm caused by aircraft in flight, they are broad enough to state a cause of action, and the

because such restrictions could 'create critically serious problems to all air transportation patterns.' 25 Fed Reg 1764-1765. The complete FAA statement said:
" 'The proposed restriction on the use of the airport by jet aircraft between the hours of 10 p.m. and 7 a.m. under certain surface wind conditions has also been reevaluated and this provision has been omitted from the rule. The practice of prohibiting the use of various airports during certain specific hours could create critically serious problems to all air transportation patterns. The network of airports throughout the United States and the constant availability of these airports are essential to the maintenance of a sound air transportation system. The continuing growth of public acceptance of aviation as a major force in passenger transportation and the increasingly significant role of commercial aviation in the nation's economy are accomplishments which cannot be inhibited if the best interest of the public is to be served. It was concluded therefore that the extent of relief from the noise problem which this provision might have achieved would not have compensated the degree of restriction it would have imposed on domestic and foreign Air Commerce.'
"This decision, announced in 1960, remains peculiarly within the competence of FAA, supplemented now by the input of EPA. We are not at liberty to diffuse the powers given by Congress to FAA and EPA by letting the States or municipalities in on the planning. If that change is to be made, Congress alone must do it." (*City of Burbank* v. *Lockheed Air Terminal, supra,* 411 U.S. 624, 639-640 [36 L.Ed.2d 547, 557, 93 S.Ct. 1854, 1862-1863].)

general demurrers at issue were properly overruled. Nevertheless, recovery for tort damages at trial should be limited to those damages, if any, which arise out of the operation of the airport itself and should not include damages caused by aircraft in flight.

The order to show cause is discharged, and the petition for a peremptory writ is denied.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied March 15, 1977, and the petitions of the Port District and the real parties in interest for a hearing by the Supreme Court were denied April 28, 1977. Mosk, J., and Clark, J., were of the opinion that the petitions should be granted.

The United States Supreme Court denied a petition for writ of certiorari on October 3, 1977.