**KENTUCKY POWER COMPANY D/B/A, American Electric Power,**

**and**

**Louisville Gas and Electric Company and Kentucky Utilities Company, Plaintiffs,**

v.

**Martin J. HUELSMANN, et al., Defendants.**

**No. CIV.A.3:03–47–JMH.**

United States District Court, E.D. Kentucky, Frankfort.

Jan. 18, 2005.

Kevin F. Duffy, Columbus, OH, Mark R. Overstreet, Stites & Harbison, Frankfort, KY, David S. Kaplan, Sheryl G. Snyder, Frost Brown Todd LLC, Louisville, KY, for Plaintiffs.

Deborah Tully Eversole, Richard G. Raff, Public Service Commission of Kentucky, Frankfort, KY, David F. Boehm, Kurt J. Boehm, Boehm, Kurtz & Lowry, Cincinnati, OH, Dennis G. Howard, II, Elizabeth E. Blackford, Attorney General's Office, Frankfort, KY, Benjamin D. Allen, Katherine K. Yunker, Yunker & Associates, Lexington, KY, Andrew Louis Sparks, U.S. Attorney's Office, Lexington, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on two separate but interrelated motions. Plaintiffs, Louisville Gas and Electric Company ("LG & E"), Kentucky Utilities Company ("KU"), and Kentucky Power Company ("Kentucky Power"), filed motions for summary judgment [Record Nos. 30 and 74, respectively]. In support of their motions, Plaintiffs filed memorandums of law [Record Nos. 31 and 75, respectively]. All of the Defendants, Gary W. Gillis, Martin J. Huelsman, and Robert E. Spurlin, in their official capacities as Commissioners of the Kentucky Public Service Commission ("PSC"), the Kentucky Attorney General, Albert B. Chandler ("AG"), and Midwest Independent Transmission System Operator, Inc. ("Midwest ISO" or "MISO") filed responsive memorandums of law [Record Nos. 36 & 82, 80, and 85, respectively]. LG & E, KU, and Kentucky Power replied [Record Nos. 83 and 86, respectively]. Having considered all the filings, and being otherwise sufficiently advised, the Court deems this matter ripe for review.

## RELEVANT PROCEDURAL BACKGROUND

On July 18, 2003, Plaintiffs, LG & E, KU, and Kentucky Power, initiated two separate actions. Both actions sought judgments declaring KRS 278.214 facially invalid under the Commerce Clause to the United States Constitution, and preempted by federal law. These actions were filed against the commissioners of the Public Service Commission of Kentucky ("PSC")

in their official capacities,[1] the PSC itself, the Attorney General of the Commonwealth of Kentucky in his official capacity, and Kentucky Industrial Utility Customers, Inc. ("KIUC"). The two actions were consolidated for all purposes by Order filed October 27, 2003.

The PSC, the Attorney General, and KIUC subsequently moved to dismiss Plaintiffs' complaints on the ground of abstention—Plaintiffs were simultaneously challenging the validity of KRS 278.214 in a Kentucky state court proceeding. In addition, in the LG & E/KU-initiated case, the PSC, the Attorney General, and KIUC filed cross-motions for summary judgment. On December 18, 2003, before ruling on the summary judgment motions, this Court dismissed Plaintiffs' actions without prejudice, citing the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Plaintiffs responded by filing motions to vacate. This Court granted Plaintiffs' motions and reinstated the actions explaining that abstention was not warranted because the case ultimately dealt with a federal question, *i.e.*, whether KRS 278.214 was facially preempted by federal law.

On March 25, 2004, Plaintiffs filed a First Amended Complaint, naming Midwest ISO and the Federal Energy Regulatory Commission ("FERC") as additional defendants. Midwest ISO answered, denying that LG & E and KY were entitled to the declaratory judgment they sought and stating that it was unaware of any actualized conflict between KRS 278.214 and federal law or Midwest ISO's tariff. FERC moved to dismiss the First Amended Complaint for failure to state a claim upon which relief against it could be granted. The Court granted FERC's motion on

August 5, 2004, and dismissed the agency from this case.

## RELEVANT FACTUAL BACKGROUND

*Electric Energy*

As the electric utility industry developed in the United States, transmission lines first built to transport energy from point (generation source) to point (distribution substations) began to be interconnected with each other, forming networks in which there were alternative routes between generation and consumption points. This process eventually created three major networks, or power grids. These networks consist of extra-high-voltage connections designed to permit the transfer of electrical energy from one part of the network to another. The three networks are: (1) the Eastern Interconnection consisting of the eastern two-thirds of the United States; (2) the Western Interconnection consisting primarily of the Southwest and areas west of the Rocky Mountains; and, (3) the Texas Interconnection. The Texas grid is not connected with the other two (except by certain direct current lines), and the other two networks have only limited connections to each other. Through these three major grids, every utility in the 48 contiguous states is interconnected with at least one other utility. The transmission grids make it possible "for power companies to transmit electric energy over long distances at a low cost." *New York v. FERC*, 535 U.S. 1, 7–8, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002). This technical ability supported increased competition among power suppliers, however, particular power suppliers were still prevented from effectively competing due to their competitors' refusal to provide equal

---

**1.** At the time Plaintiffs initiated these actions, the PSC commissioners were Martin J. Huel-smann, Gary W. Gillis, and Robert E. Spurlin.

access to transmission lines. *Id.* at 8–9, 122 S.Ct. 1012.

*FERC Order 888*

FERC investigated these impediments to competition and, on April 24, 1996, issued Order 888,[2] which became final and effective on July 9, 1996. The stated purpose of Order 888 was to promote competition in the wholesale electricity market by ensuring equal access to transmission services. *See New York v. FERC*, at 5–11, 122 S.Ct. 1012. Briefly, Order 888 requires utilities owning controlling or operating facilities used for transmitting electric energy in interstate commerce to treat their own use of those transmission facilities under the same transmission tariffs they apply to others. To implement the policy of nondiscriminatory access, Order 888 directed all such utilities to file open access nondiscriminatory transmission tariffs ("OATT"), specifying the terms and conditions of transmission service applicable to all eligible customers. FERC's authority to issue and enforce Order 888 was recently upheld by the United States Supreme Court in *New York v. FERC*.[3]

Order 888 includes a *pro forma* OATT that sets non-price minimum terms and conditions of nondiscriminatory transmission service. Paragraph 13.6 of the *pro forma* OATT addresses the procedure for curtailment or interruption of electricity service in response to a transmission capacity shortfall. Specifically, Paragraph 13.6 mandates nondiscriminatory *pro rata* curtailment of electricity.[4]

Through Order 888, FERC encouraged transmission-owning utilities such as LG & E, KU, and Kentucky Power to explore participation in regional transmission systems (RTOs), administered by independent third party system operators (ISOs), to facilitate the provision of nondiscriminatory, open access transmission service, and enhance the stability and reliability of the nation's power grid. All of the Plaintiffs party to this lawsuit are currently part of a RTO. Plaintiffs, LG & E and KU, are members of Midwest ISO. Kentucky Power, as a wholly owned subsidiary of American Electric Power Company, ultimately decided to join PJM Interconnection, L.L.C. ("PJM"). FERC has approved the

**2.** *See* Order 888, 61 Fed.Reg. 21,540 (1996). Order 888 has been succeeded and supplemented by Orders 888–A, 888–B, and 888–C. These Orders will be collectively referred to as Order 888, unless citation to a specific order is required.

**3.** *New York v. Federal Energy Regulatory Commission*, 535 U.S. 1, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002).

**4.** See Order 888, Appendix D, Paragraph 13.6, 62 Fed.Reg. at 12,470 ("In the event that a Curtailment on the Transmission Provider's Transmission System, or a portion thereof, is required to maintain reliable operation of such system, Curtailments will be made on a non-discriminatory basis to the transaction(s) that effectively relieve the constraint. If multiple transactions require Curtailment, to the extent practicable and consistent with Good Utility Practice, Curtailments will be proportionally allocated among the Transmission Provider's Native Load Customers, Network Customers, and Transmission

Customers taking Firm Point–To–Point Transmission Service. All Curtailments will be made on a non-discriminatory basis, however, Non–Firm Point–To–Point Transmission Service shall be subordinate to Firm Transmission Service. When the Transmission Provider determines that an electrical emergency exists on its Transmission System and implements emergency procedures to Curtail Firm Transmission Service, the Transmission Customer shall make the required reductions upon request of the Transmission Provider. However, the Transmission Provider reserves the right to Curtail, in whole or in part, any Firm Transmission Service provided under the Tariff when, in the Transmission Provider's sole discretion, an emergency or other unforeseen condition impairs or degrades the reliability of its Transmission System. The Transmission Provider will notify all affected Transmission Customers in a timely manner of any scheduled Curtailments.")

establishment of both RTOs and accepted for filing their open access transmission tariffs, the MISO OATT and the PJM OATT. As required by FERC regulations, both the MISO OATT and the PJM OATT are modeled on the Order 888 *pro forma* tariff. Consequently, the curtailment provisions of both OATTs provide for nondiscriminatory *pro rata* curtailment of transmission service.

*KRS 278.214*

During the 2002 regular session, the Kentucky General Assembly passed Senate Bill 257, titled, "An Act relating to electric generating facilities and declaring an emergency." Included in SB 257 was the curtailment priority provision that is at issue in the present case, SB 257 § 12, now codified as KRS 278.214. KRS 278.214 provides:

> **Curtailment of service by a utility or a generation and transmission cooperative.** When a utility or generation and transmission cooperative engaged in the transmission of electricity experiences on its transmission facilities an emergency or other event that necessitates a curtailment or interruption of service, the utility or generation and transmission cooperative shall not curtail or interrupt retail electric service within its certified territory, or curtail or interrupt wholesale electric energy furnished to a member distribution cooperative for retail electric service within the cooperative's certified territory, except for customers who have agreed to receive interruptable (*sic*) service, until after service has been interrupted to all other customers whose interruption may relieve the emergency or other event.

On June 24, 2002, the PSC directed all electric utilities subject to its jurisdiction to file tariffs implementing the new requirements of KRS 278.214. LG & E and KU filed their revised tariffs on August 29, 2002, and Kentucky Power filed its revised tariff on August 30, 2002. All of the Plaintiffs' revised tariffs stated that the utilities would comply with KRS 278.214, but only to the extent that compliance would not force them to violate the terms of their respective RTO tariffs or federal regulations, *i.e.*, Order 888.

The PSC responded by issuing orders suspending these proposed revisions and initiating an investigation into whether the revised tariffs fully expressed the requirements of KRS 278.214.[5] By Order dated May 28, 2003, the Commission rejected the revised tariffs as inconsistent with KRS 278.214 and directed the plaintiffs to file "new tariffs setting forth without qualification the expressed transmission priorities required by KRS 278.214."[6] The PSC denied Plaintiffs' requests for rehearing on July 3, 2003.[7] Subsequently, Plaintiffs initiated these declaratory judgment actions.

---

5. *See, e.g., An Investigation of the Tariff Filing by Louisville Gas and Electric Company to Implement KRS 278.214*, Case No.2002–00345, Order dated September 27, 2002; *An Investigation of the Tariff Filing by Kentucky Utilities Company to Implement KRS 278.214*, Case No.2002–00346, Order dated September 27, 2002; and *An Investigation of the Tariff Filing by Kentucky Power Company d/b/a American Electric Power to Implement KRS 278.214*, Case No.2002–00349, Order dated September 27, 2002.

6. *See, e.g., An Investigation of the Tariff Filing by Louisville Gas and Electric Company to Implement KRS 278.214, etc.*, Case Nos.2002–00345, –00346, –00348, and –00349 Order dated May 28, 2003.

7. *See, e.g., An Investigation of the Tariff Filing by Louisville Gas and Electric Company to Implement KRS 278.214, etc.*, Case Nos.2002–00345, –00346, and –00349 Order dated July 3, 2003.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant establishes a prima facie basis for summary judgment, the nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rest upon mere allegations or denials but must set forth specific facts showing the existence of a material issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

Plaintiffs challenge KRS 278.214 on the basis that it is preempted by federal law and violates the dormant Commerce Clause to the United States Constitution. Both issues will be reviewed below.

8. U.S. CONST. art. VI, cl. 2: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United

### I. *Federal Preemption*

Plaintiffs first argue that KRS 278.214 is preempted under the Supremacy Clause of the United States Constitution.[8] [U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, " 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 108, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citations omitted). The Sixth Circuit has recognized three basic types of preemption:

(1) express preemption where the intent of Congress to preempt state law is clear and explicit; (2) field preemption where Congress' regulation of a field is so pervasive or the federal interest is so dominant that an intent can be inferred for federal law to occupy the field exclusively; and (3) conflict preemption, where federal and state law so conflict that it is impossible for a party to comply with both simultaneously, or where enforcement of state law prevents the accomplishment of the full purposes and objectives of federal law.

*R.R. Ventures, Inc. v. Surface Transp. Bd.,* 299 F.3d 523, 561 (6th Cir.2002).

The Court believes that, in the instant case, of the three basic types of preemption, the most valid of Plaintiffs' arguments pertain to conflict preemption. "When Congress has not stated its intent to preempt expressly, such intent may be inferred from an actual conflict between the federal and state laws." *Southeastern Oakland County Resource Recovery Auth. v. City of Madison Heights,* 5 F.3d 166, 168 (6th Cir.1993). "An actual conflict ex-

States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Law of any State to the Contrary notwithstanding."

ists where compliance with both the federal and the state law is impossible, or where the state law stands as an obstacle to achievement of the goals of Congress." *Id.* "Regulations promulgated by a federal agency that conflict with state law preempt state law in the same manner as do specific acts of Congress." *Interstate Towing Ass'n, Inc. v. City of Cincinnati,* 6 F.3d 1154, 1157 (6th Cir.1993).

FERC Order 888 and the applicable OATTS require, upon an emergency shortage of electricity, that curtailments of electrical transmissions occur on a non-discriminatory, *pro-rata* basis. Conversely, the Kentucky statute mandates that, under the same circumstances, utilities under the jurisdiction of the PSC curtail service to "all other customers" prior to curtailing service to retail customers within their "certified territor[ies]". These two laws are seemingly irreconcilable; where the federal law requires electrical service curtailed in a non-discriminatory manner, the state law, in essence, orders utilities to refrain from curtailing in-state customers' electrical service until service has been interrupted to all other customers.

Defendant MISO, however, adamantly contends that no actual conflict exists between the state and federal provisions. Midwest ISO explains that the applicable OATTs govern the

> terms and conditions under which customers like LG & E and KU take transmission service and does not direct that any transmission customer must react to a curtailment of its transactions without favoring captive customers who rely on it for bundled retail electric service. [Record No. 85, p. 23].

Thus, per MISO's explanation, FERC Order 888 and the applicable OATTs merely regulate how an RTO is to allocate curtailments of transmission service among its transmission customers such as Plaintiffs; nothing in the OATTs direct how Plaintiffs must allocate a reduction of their transmission service among the retail customers they serve.

■ The Court agrees with MISO's construction. FERC Order 888 and the applicable OATTs only regulate curtailments effectuated by the RTOs, the transmission providers. KRS 278.214, on the other hand, regulates the curtailments effectuated by transmission owners such, *i.e.,* LG & E, KU, and Kentucky Power. Thus, the curtailment provisions of the OATTs and those found in the Kentucky statute are complementary and sequential; KRS 278.214 picks up where the OATT provisions end. This construction illustrates that there is no direct conflict between the state and federal provisions, and that compliance with both is not impossible. As such, the Court finds KRS 278.214 withstands Plaintiffs' federal preemption challenge.

## II. *The Dormant Commerce Clause*

Secondly, Plaintiffs assert that KRS 278.214 infringes on the negative implications of the Commerce Clause,[9] alleging that the provision purposefully discriminates in favor of local economic interests. By extending its protections only to customers within a regulated utility's "certified territory," and because the certified territories of LG & E, KU, and Kentucky Power are entirely within the Commonwealth of Kentucky, Plaintiffs argue that

---

**9.** U.S. CONST. art. I, § 8: "The Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." The negative Commerce Clause (also referred to as the "dormant" Commerce Clause) is the

principle that state and local laws are unconstitutional if they place an undue burden on interstate commerce. The U.S. Supreme Court has inferred this principle from the Article I grant of power to Congress.

KRS 278.214 protects the reliability of electric service to Kentucky customers at the expense of out-of-state customers. Plaintiffs argue that this protectionist measure is purposefully discriminatory and, as such, violates the dormant Commerce Clause.

■ The dormant Commerce Clause is the principle that state and local laws are unconstitutional if they discriminate against or unduly burden interstate commerce. *GMC v. Tracy,* 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). The obvious threshold issue is whether the state law affects interstate commerce. The scope of commerce among the states for purposes of a dormant Commerce Clause analysis is broadly defined. *See Philadelphia v. New Jersey,* 437 U.S. 617, 622, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) ([A]ll objects of interstate trade merit Commerce Clause protection). It is clear that transmission, and thus curtailment, of electric energy effects interstate commerce. *See New York v. FERC,* 535 U.S. 1, 16, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002) ([T]ransmissions on the interconnected national grids constitute transmissions in interstate commerce).

■ The second key question is whether the state law discriminates against out-of-staters. A regulation that burdens interstate commerce is presumed to be invalid if it is found to be discriminatory. *Chemical Waste Management v. Hunt,* 504 U.S. 334, 344 n. 6, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992). A law is found to discriminate against interstate commerce if it differentiates between in-state and out-of-state economic interests in a manner that benefits the former and burdens the latter. *Oregon Waste Sys. v. Department of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).

■ A two-tiered test is used to determine whether a state statute violates the dormant Commerce Clause. First, a court must determine whether the state statute is facially discriminatory. If there is no facial discrimination, a court then seeks to determine whether the purpose and/or effect of the law is to discriminate. Even if the court decides that a particular statute is not discriminatory, the law will be found to be unconstitutional if the law's burdens on interstate commerce exceed its benefits. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). If, on the other hand, the court finds that the law is discriminatory, there is a strong presumption against its constitutionality. The discriminatory statute will survive scrutiny only if the state can demonstrate a valid purpose that cannot be achieved in a less discriminatory way. *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986).

■ Although KRS 278.214 does not use the phrase "Kentucky customers" to describe the class of customers favored by the statute, it is undisputed that only Kentucky customers can benefit from the curtailment priority set forth therein. The protected class under KRS 278.214 includes (1) retail customers inside the utility's certified territory; and (2) Kentucky member distribution cooperatives purchasing power at wholesale to serve their own retail customers. Thus, the disfavored class of "all other customers" encompasses all out-of-state customers, including out-of-state customers similarly situated to those in-state. Discriminatory state statutes cannot escape commerce clause scrutiny merely by avoiding explicit reference to in-state interests.

■ Defendant, MISO, contends that, because some in-state customers are also disfavored, the statute withstands Plaintiff's dormant Commerce Clause challenge. Contrary to Defendant's assertion, however, the fact that some Kentucky customers are not within the favored class under

KRS 278.214 does not change the constitutional analysis. Regulations that treat all out-of-staters in a disparate manner will be treated as discriminatory even though some in-staters are also adversely affected by the regulation. *See Dean Milk Co., v. Madison,* 340 U.S. 349, 354 n. 4, 71 S.Ct. 295, 95 L.Ed. 329 (1951) (It is immaterial that Wisconsin milk from outside the Madison area is subjected to the same proscription as that moving in interstate commerce); *see also, Fort Gratiot Sanitary Landfill v. Michigan Dep't of Natural Resources,* 504 U.S. 353, 361, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992). KRS 278.214 violates the dormant Commerce Clause because it provides curtailment preference *only* to Kentucky customers and disadvantages *all* similarly situated customers located outside Kentucky borders.

Defendant, PSC, bases its argument for validity, in part, on an alleged distinction between wholesale and retail customers. In support of this argument, the PSC relies on the United States Supreme Court ruling in *GMC. v. Tracy,* 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). In *Tracy,* General Motors, a large industrial customer of an independent natural gas marketer, challenged an Ohio statute that taxed sales by the independent marketer but exempted from taxation all natural gas sales by Ohio monopoly utilities. *Id.* General Motors alleged that the differential tax treatment of out-of-state gas suppliers constituted facial discrimination, and was *per se* invalid under the Commerce Clause. *Id.*

The Court in *Tracy* held that the statute did not facially discriminate because independent marketers and monopoly utilities were not similarly situated. The Court observed that the in-state monopolies primarily served a market consisting of captive residential customers who required the stability of regulated retail service. *Id.* at 301–302, 117 S.Ct. 811. By contrast, the out-of-state marketers were serving large industrial end-users in a competitive market, and were not in a position to provide service to the captive retail market. *Id.* at 302–303, 117 S.Ct. 811. Based on these differences, the Court concluded that the differing tax treatment was not discriminatory because like markets were not being treated differently. *Id.*

While the PSC is correct in its assertion that *Tracy* made it abundantly clear that a state is entitled to treat competitive wholesalers differently from regulated monopolies pledged to serve the public, that situation is not present in the case *sub judice.* The discrimination in curtailment priorities set forth by KRS 278.214 is not between captive Kentucky retail customers and competitive out-of-state wholesale customers. Rather, KRS 278.214 requires utilities such as Plaintiffs to curtail service to retail customers in other states prior to curtailing service to identically situated retail customers in Kentucky. Therefore, unlike the situation in *Tracy,* the Kentucky statute discriminates against similarly situated out-of-state interests. "[I]f a State discriminates against out-of-state interests by drawing geographical distinctions between entities that are otherwise similarly situated, such facial discrimination will be subject to a high level of judicial scrutiny even if it is directed toward a legitimate health and safety goal." *Tracy,* 519 U.S. at 307 n. 15, 117 S.Ct. 811. Whatever its applicability to differently situated markets, *Tracy* is inapplicable to the differing treatment of identically situated customers in different states mandated by KRS 278.214.

The Commerce Clause "precludes a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders or to the products derived therefrom." *New England*

*Power Co. v. New Hampshire,* 455 U.S. 331, 338, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982). This, however, is precisely what KRS 278.214 does; the contested statute gives Kentucky residents a preferred right of access to transmission service in the event of a temporary scarcity of that service. The Commerce Clause does not allow such protectionist regulations.

As stated above, a discriminatory statute will survive scrutiny only if Defendants can demonstrate a valid purpose that cannot be achieved in a less discriminatory way. *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). Defendants assert that KRS 278.214 "is constitutional, for Kentucky has no other means to advance a supremely important local interest." Record No. 34, p. 18. *Pennsylvania v. West Virginia,* however, makes clear that a state's interest in ensuring adequate utility service will not justify giving its own citizens a curtailment preference that compromises the ability of other states to ensure adequate service to their citizens. *Pennsylvania v. West Virginia,* 262 U.S. 553, 597, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). It is the Court's opinion that Defendants have failed to demonstrate that KRS 278.214 advances a valid purpose that cannot be achieved in a less discriminatory way.

As a result of the curtailment procedure in KRS 278.214, retail and wholesale customers in other states will have their service curtailed during transmission system emergencies while similarly situated customers in Kentucky will be unaffected. The dormant Commerce Clause simply does not permit this result.

## CONCLUSION

The Court finds that KRS 278.214 is complementary and sequential to FERC Order 888 and the MISO and PJM OATTs. As such, the Court holds that KRS 278.214 is not preempted under the Supremacy Clause of the United States Constitution. The Court further finds that KRS 278.214 is unconstitutional as it violates the dormant Commerce Clause to the United States Constitution. Accordingly, for the foregoing reasons,

**IT IS ORDERED**, that Plaintiff's motions for summary judgment [Record Nos. 30 and 74] be, and the same hereby are, **GRANTED.**